## BLOODWORTH v. THE STATE.

1. CRIMINAL LAW. *Rape.* *What is not.* Force being a necessary element in the crime of rape, where the intercourse is had with a very weak-minded woman, and her yielding to the wish of the party was obtained by gross fraud, this will not constitute rape. In this case the fraud consisted in a fictitious marriage.

Case cited: Wyatt v. State, 2 Swan, 396.

2. SAME. *Jury.* *Competency of.* It is no ground for a plea in abatement to an indictment that one of the grand jurors who acted on and found the bill of indictment, had served on the jury within twelve months; also, in case of a petit jury, the verdict will be valid unless objection is made by challenge in the proper time.

Code cited: Secs. 3988, 4009-10.

### FROM ROBERTSON.

Appeal from the Circuit Court. JAMES E. RICE, Judge.

E. A. HICKS for complainant.

ATTORNF /-GENERAL HEISKELL for the State.

FREEMAN, J., delivered the opinion of the court.

This is an indictment for rape, alleged to have been committed on Eliza Ann Morris by one Percell, in which the present defendant is alleged to have been present, aiding and abetting and assisting said Percell in the perpetration of the act, and so guilty of the same offense. Bloodworth was convicted, and appeals in error to this court, where several errors are insisted on for reversal of the judgment of said court below.

First, it is insisted the court erred in sustaining a demurrer to the plea in abatement filed by defendant. Said plea sets up the fact that the grand jury was composed of thirteen men; that O. P. Braden and J. G. C. Mason were members of the grand jury who found the indictment at the February term, 1872, and that the said two grand jurors had been members of the grand jury at the previous June term of the same court. It is therefore insisted that they were incompetent jurors, and the indictment, as a consequence, not found by a legally constituted grand jury, and the proceedings under it void.

Sec. 3988 provides that no court shall appoint any person to serve as a juror more than once in each period of twelve months, either on the original panel or to fill a vacancy. The next section requires the court to discharge him, if any juror is appointed in

violation of this provision, and appoin another free from like objection. Secs. 4909–10 provide that either party may challenge for cause any person presented as a petit juror who is incompetent to act as a juror under the provision of the Code, the latter section specifying that having served as a juror within twelve months is one of the causes for such challenge.

Construing the various sections together, they mean that it is the duty of the court to discharge a party who has served within twelve months, when the matter is brought to the attention of the court; and we add, that the court should take upon itself to enquire, and discharge this duty, before the grand jury is empaneled; but this is directory, only imposing a duty on the court, but not affecting the validity of the action of such jury, if the duty is neglected. This, so far as a grand jury is concerned, is the rule; but as to a petit jury, it is the right of either party to the case to get clear of the incompetent juror by challenge, and if he fails from proper cause to exercise this right at the proper time, it would be a conclusive waiver of it, and the verdict of the jury be valid. There was no error in the case on this point.

The next question presented arises on the facts as to the consent of the party alleged to have been the subject of the offense, or rather her incapacity, by reason of imbecility or feebleness of mind, to give such consent, and the law as charged on this question by his Honor the Circuit Judge.

The proof shows that Percell had procured a man named Cook to personate a minister of the gospel for

the purpose of performing a mock ceremony of marriage with Miss Morris.  Percell and Cook, together with defendant, went to a place in the woods near the house of the father of Miss Morris, in the latter part of October, about two hours before sundown. That Percell went to the house, took the daughter, as her mother says, by the arm, and led her off to the woods, the mother following.  They went to the place where Cook and defendant were in the woods, and there Cook, representing himself as a minister of the gospel from Clarksville, performed a pretended marriage ceremony, producing at the time a paper purporting to be a marriage license authorizing him to marry the parties.  Percell and Eliza Ann Morris, the daughter, then started off to go to Percell's house, about a mile, perhaps, from Morris's.  A brother of the girl seems to have gone to the same house that night, stayed all night, and slept in the same room with the parties.  Percell slept with the girl that night.  No force is shown; on the contrary, it is clear that the girl made no objection, and no doubt willingly, so far as she was capable, yielded to all that was done.  It is equally clear, however, that the whole affair was a premeditated and deliberately carried out piece of fraud on the part of Percell and Cook, for the purpose of having sexual intercourse with a feebleminded, if not imbecile, girl—conduct deserving the utmost reprobation, and well worthy of the infliction of the severest penalty.

It is not so satisfactorily shown that the present defendant had any guilty knowledge of the purposes

of the other two parties, and the evidence might well
generate a doubt as to whether he was not deceived
into believing it to be a piece of sport on the part
of the other two, or a *bona fide* marriage.    However,
the jury seem to have thought differently.

As to the capacity of the girl to consent to what
was done, or to refuse or oppose it, owing to mental
incapacity, the evidence is meager and not entirely
satisfactory.    The only evidence bearing on the ques-
tion directly, is that of Dr. Menees, who says that
he had been a practicing physician for seventeen years,
and had visited the family of Morris at intervals during
that period, and had waited on Eliza Ann when she
was sick.    He states that "she was a woman of very
weak mind, and almost an idiot."    He gave it as
his opinion that she had enough mind to consent to
have intercourse with a man, but that he thought she
did not have mind enough to know what that con-
sent was, &c.    This is, as we have said, very un-
satisfactory evidence as to the capacity of the party,
and from it we could hardly be justified in concluding
that she was an idiot, wholly incapable of assenting
to the act complained of; nor could a court or jury
well be called on to say with precisely how much
intelligent comprehension of the nature and consequence
of an act a party under such circumstances must have
acted in order to make out the element of this offense,
given in the statute, of its being forcible and "*against
her will.*"

Without further referring to the testimony, howev-
er, it suffices to say, that it clearly appears that this

Bloodworth *v.* The State.

is a case of intercourse had with a very weakminded *Fraud* woman, where her yielding to the wish of the party was obtained by gross fraud.    And further, the jury have found—as they were bound, under the charge of his Honor, in order to conviction—that the woman was of such weak mind as to be incapable of giving her consent; or, to use his language, "was an idiot or lunatic, or of such feeble intellect as not to be capable of exercising a rational will, or of giving or withholding her consent."    And the question is, as to whether intercourse had with a woman without force, under such circumstances, is or may be a rape under our laws.    In the language of Judge Caruthers, in the case of *Wyatt* v. *The State*, 2 Swan, 396, "We agree with the Attorney General, that the moral turpitude of the crime is as great when perpetrated by fraud and deception, as by force," and that the act richly deserves to be severely punished; but the question is, not what it deserves, nor what our feelings and individual opinions would dictate, but "what sayeth the law."    It was settled in that case, that the language of our statute defining rape to be "the unlawful carnal knowledge of a woman *forcibly* and against her will," necessarily included *force* as an essential element of the crime, and that to attain the result by fraudulently obtaining consent to the act, would not make out the offense.    This case was decided upon a very full reference to the authorities, and we are. aware there are several most respectable authorities holding the opposite view, we feel bound to follow our own decisions.    The statute, in fact, hardly

admits, with any degree of fairness, a different con-
struction; for, to say that a thing is done *forcibly*
and *against* the will of a party, is not sustained by
showing that no force was used, but that fraud and
deceit had been used instead of force. In fact, the
idea of attaining an end by the use of fraud necessa-
rily excludes the idea of force, and is antagonistic to
it. As to the want of competent capacity to give·
or withhold consent, while this may and does exclude
the idea of consent, affirmatively, yet it does not
necessarily or fairly include or involve the idea of
the language of the statute, that it was done *against*
her will. The principle of the case of *Wyatt* v. *The
State,* however, we deem conclusive of this aspect of
the question; for in case of fraud, where a woman
yields to sexual intercourse with a man supposing him
to be her husband, and is thus outraged in fact by
fraud, she gives no intelligent assent to what is done,
and she as much withholds her assent to the act
done, if the case was apprehended by her, as the
imbecile, and even would revolt from it; yet in such
a case, under the rule laid down, there would be no
rape. We therefore feel constrained to hold, that the
element of force being entirely excluded by the proof
in the case, and the fact of some degree of assent
shown, and certainly no dissent, that the act could
not have been both forcible and against her will, and
these elements are, by our statute, made essentials in
this crime.

The Legislature, with their attention called to this
case, can, and no doubt will, easily enact a law that

will meet the precise case. We have no power to do it, and can only administer the law as we find it.

There are perhaps several other errors in admission of testimony, and, it may be, in the charge of his Honor, but we do not deem it necessary to notice them, as what we have said is conclusive of the case.

Reverse the case and remand for a new trial.