15 So.2d 336

## HACKER v. STATE.

### 8 Div. 338.

Court of Appeals of Alabama.

June 22, 1943.

Rehearing Denied Aug. 10, 1943.

R. B. Patton and D. U. Patton, both of Athens, for appellant.

250

Wm. N. McQueen, Acting Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Title 14, § 398, Code 1940, provides: "Any person who has carnal knowledge of any girl under twelve years of age, or abuses such girl in the attempt to have carnal knowledge of her, shall, on conviction, be punished, at the discretion of the jury, either by death or by imprisonment in the penitentiary for not less than ten years."

At the Fall Term 1942 of the Limestone County Circuit Court, the grand jury found, and returned into open court an indictment against this appellant wherein he was charged with the violation of the above quoted Statute; specifically, that he "did carnally know, or abuse in the attempt to carnally know Kathleen Adams, a girl under the age of twelve years, etc."

The record shows that the defendant is a man 49 years of age, and that the girl in question was 7 years of age at the time of the alleged commission of the offense.

In the court below it was insisted that Kathleen Adams, the alleged injured party, was incompetent to testify on account of her tender years, and her inability to comprehend the nature and binding obligation of an oath. As stated, she was seven years old. Before entering upon the trial proper, the court examined into this question fully and thoroughly, and on the voir dire, she testified:

"I am seven years of age and I go to school. I don't know how long I have been going to school. I have heard about God and I heard about God from a Sunday School card. The Lord made me. I know what it is to tell the truth and I know what it is to tell something that is untrue or false. When little children tell the truth they go to the Lord and when they tell a story they go to the booger-man.

"Then the following question was asked the witness and her answer returned:

"Q. Do you know what it is to hold up your hand and promise God to tell the truth by his help? A. Yes."

This girl child was cross-examined at length by earnest counsel for defendant and at the conclusion of the cross-examination said counsel interposed the following objection:

"The defendant then and there objected to the witness Kathleen Adams, testifying and as grounds assigned the following: (1) that it conclusively appears from the testimony that the witness is incompetent; (2) that it conclusively appears from her testimony that the witness is of such tender years and of such limited mentality that she is not conscious of the solemnity of an oath; (3) that the witness is shown to be incompetent."

"The court overruled the objection of the defendant to the witness testifying and the defendant then and there duly and legally excepted."

This ruling of the court raises the controlling and governing question involved upon this appeal.

After a thorough, careful and attentive consideration of this insistence we are clear to the conclusion, and so hold, there was no error of the trial court in its ruling on this question. We are of the opinion if any doubt of the correctness of said ruling prevailed or existed, all such doubt was fully dissipated and rendered innocuous by the straightforward manner in which this child of tender years gave her testimony as a witness. In passing upon the competency of children as witnesses much must be left to the sound discretion of the trial court; and, as stated in the case of White v. State, 136 Ala. 58, 67, 34 So. 177, 180: "It is only in strong cases the ruling of the court admitting them as witnesses should be reversed." There is no set rule, nor could there be, as to the particular age at which a witness may, in

all cases, be held legally competent to testify. It is manifest that such a rule would be unwise and impracticable for the reason as everyone knows, that children necessarily differ greatly in powers of observation and memory, etc., and for the further reason such a rule would practically "proclaim immunity to certain offenses of a serious nature against the persons of children which is next to impossible to establish without receiving their account of what has taken place" as is patently true in the instant case.

The child, Kathleen Adams, among other things, testified:

"I know Mr. Hacker sitting right there and I remember several weeks ago I was coming from school one afternoon and I saw him coming down the road and he said 'Hi' to me and I said 'Howdy' to him. We walked on down the road together until we got to the cross-roads, and he picked me up, put his hands over my mouth, pulled off my bloomers and then jumped in the ditch.

"Then the following question was asked the witness: Q. And he laid you down in the ditch and put his hand over your mouth and laid down on top of you? The witness answered, 'Yes.'

"And the witness continued testifying and said: When he got on top of me down there under the bridge he had me under him and he was lying all stretched out on top of me. He took my pants down that I had on and he was on top of me then and all stretched out. I felt something push inside me down between my legs and I felt it four times and it hurt me bad and I hollered and called momma. Then Mr. Hacker run down the ditch and got out and I got up and put my pants back on. I was bleeding down there then and after I put my pants on I went home and told momma about it. It felt like something stiff that he was putting in me down there and I was crying when I got home. When Mr. Hacker picked me up he put his hand over my mouth before he jumped in the ditch and he carried me and laid me down and got on top of me and pulled my pants down and put something in my privates and I felt it four times. And when I screamed and cried he left."

Appellant's counsel argues at length and lays great stress upon the fact that numerous discrepancies and contradictions appear in the testimony of the girl as to the details incident to the act complained of, not necessary to set out here. As to this, it is manifest, of course, that a child of tender years under the rigid and insistent cross-examination of able counsel could not be expected to testify definitely and with exact precision as to all of the acts of the accused as could and would be expected of mature persons. Moreover, all this was for the jury to determine.

Throughout the entire insistences here by appellant it is contended that the appellant used his finger to inflict the serious injury to the genital parts of the child, which injury was conclusively shown by the undisputed testimony, and in this connection urges the physical impossibility of defendant to have done otherwise, with one hand on the child's mouth and the other arm around her body. The merit of this insistence is not apparent. The undisputed testimony, i.e., testimony without any semblance of conflict, showed conclusively that the accused was lying on top of the little child when the offense was committed, a position which in itself refutes the insistence that he used his finger and not his private parts in committing the act. This, also, was for the jury to determine.

Further on, in appellant's brief we find the following statement, viz: "It takes no flight of imagination to know that this child, under the dominating and vicious influence of the father and mother, who admit their feelings against the defendant are bad * * * had her change her testimony so that she was attacked while lying down, instead of standing up,—that it was not the finger that hurt her but something else."

We cannot accord to the severe criticism, above quoted. Certainly, counsel for appellant could not have expected the naturally distressed and heart broken mother and father of this small child, who had been so bestially and cruelly assaulted, to have testified that their feelings were good toward the man who brought this naturally great sorrow into their lives; and we think the opprobrious designation of this suffering mother and father, "dominating" and "vicious," was inapt, uncalled for and out of place.

After proper predicate, witness, George Adams, testified:

"I am the father of Kathleen Adams, who is seven years old. I went to see Mr. Hacker the Friday afternoon after it happened on Thursday at his boy's house where

he had been staying. I asked him why he had mistreated her and he said, 'I am sorry.'

"Mr. Hacker said, 'I am sorry I done any such way.' I asked why he taken her down in that side ditch and mistreat her any such way and he said, 'I am sorry I mistreated her any such way.'"

The record discloses that Mrs. Adams (mother of Kathleen) testified among other things: "I am the mother of Kathleen Adams who has just testified and I remember seeing her after she came home from school on August 27th. She was crying when she came up and I examined her pants which were right smart bloody. It was not what you call soaked, but where the blood had been dripping her walking had caused it to rub together. Her vagina was still bleeding a little when she got home. She was nervous and pale and her eyes swollen like she had been crying a lot. And cried all evening; and cried for several nights after that. That night she said she was hurting down in her private parts. This happened Thursday evening and my husband was not home at that time. I did not take her to the doctor until Saturday morning. My husband carried her to the doctor. The child was bloody all around her lower region and I was washing when she got home and threw her pants in the water and washed them. It just unnerved me, so I throwed them in the water and had her to squat down so I could examine her."

Dr. F. M. Hall, county health physician, examined the privates of the injured girl on Saturday morning and testified as to her condition and stated, among other things: "I recall making an examination of Kathleen Adams one Saturday morning and after the examination there was on the outside a little below the entrance of the vulva a blue spot the diameter of your little finger; the vulva is a female genital organ. When I pulled the lips of the vulva back, about a quarter of an inch from the bottom part the area appeared to me as having been rubbed raw and there was on the surface the appearance of blood. On rubbing it with cotton fresh blood appeared. The hymen was not intact, I mean by that that it was dislocated or ruptured. In my opinion the raw condition could have been inflicted upon the child on Thursday afternoon prior to my examination."

The court delivered a full, complete and able oral charge to the jury. The oral charge was fair in its every detail and correctly stated the law of the case in its every aspect. No exception was reserved thereto. In addition to said charge the court, at the request of defendant, gave numerous special written charges, 34 in number. Seven charges were refused to defendant. Five of these charges were the affirmative charge as to felony. There is no phase of this case which entitled the defendant to a directed verdict as to the charge of felony contained in the indictment. Hence there was no error in the action of the court in this connection. The remaining two refused charges were also properly refused either as not stating the law correctly, and also for the reason that said charges were fairly and substantially covered, not only by the oral charge of the court, but also by the charges given at request of defendant.

The motion for a new trial was wholly without merit, and hence properly refused and denied.

In concluding appellant's brief, earnest counsel for appellant make the following statement: "It will be noted that the jury sentenced the defendant for twenty years in prison,—it is easy for the judicial mind to see that when such sordid details are outlined to a jury that passion and prejudice is easily aroused,—it is expected that juries sometimes are swept off their feet, and of course we can see that this is just what happened in this case,—a conviction of twenty years, without facts to support it."

The foregoing statement is not in line with the views entertained by this court. From the undenied sordid and undisputed facts in this case, we are of the opinion that the sentence imposed by the jury was merciful in the extreme, and the appellant has no right to complain. Under the facts of this case, the courts of necessity as being right and proper would have readily sustained a much severer penalty, if the jury had so determined.

The record in this case is regular in all respects. No error prejudicial to the substantial rights of the defendant appears. It follows, therefore, that the judgment of conviction, from which this appeal was taken, must be affirmed. It is so ordered.

Affirmed.