48 So.2d 255

**STEPHENSON v. STATE.**

**4 Div. 134.**

Court of Appeals of Alabama.
May 30, 1950.

Rehearing Denied June 20, 1950.

E. O. Griswold, of Enterprise, and J. C. Fleming, of Elba, for appellant.

380

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Judge.

The accused was indicted and convicted on a charge of raping Miss Lois Layton. The prosecutrix was 27 years of age and unmarried. At the time of the trial she was pregnant.

It is evincingly clear that the evidence fails to make out a case of carnal knowledge by actual force. If the judgment of conviction can be sustained, it must be on the basis of the doctrine that the prosecutrix was so mentally impotent as to be incapable of consent and therefore neither actual force, beyond the mere force of penetration, nor actual resistance could become a material factual inquiry.

We will devote our attention solely to this question.

The evidence in respect to the mental deficiency of Miss Layton is in the main without dispute.

She completed the seventh grade at school, but apparently she did not make any progress in her studies. Her advancements from grade to grade were given on the basis of "social promotions." Her teachers of former years testified that she was obedient, cooperative, and normal in her social and physical activities with the other children.

At her present age she can neither read nor write, nor can she "tell the time of day." Her physical condition is in no way impaired. So far as the record discloses she has never suffered from any serious illness or physical malady. She lives in the city of Enterprise, Alabama, with her mother. The latter devoted her time mainly to sewing for the public. Miss Layton did the housework including washing and ironing and preparing the meals. There is no indication from the evidence that these duties were not performed efficiently and intelligently. In fact, Mrs. Layton testified that her daughter's work about the home was very satisfactory.

There was testimony from nonexpert witnesses that the prosecutrix was not mentally normal. A doctor testified that she had the mind of a normal child of about 8 years of age. The physician was not an expert on mental diseases, and so stated. His examination of Miss Layton was superficial. He observed her only a few times and never did make any mental tests otherwise. In fact, all of the witnesses who gave testimony with reference to this matter seemed to have based their conclusions primarily on the fact of the inability to read and write and to tell the time of day, after spending several years in school.

In her examination, direct and cross, Miss Layton answered the questions responsively and fully. Her replies were coherent and intelligent. She related the circumstances of the act of sexual intercourse in detail and with clearness. In fact, according to her testimony, she had sexual intercourse with one Dade Edmondson on two different occasions during the same afternoon and night. She related these occurrences in detail also, and there does not appear that actual force was required at either of these times.

In her testimony Miss Layton showed a knowledge of distances, locations, directions, and names of the streets in the city. She knew about her pregnancy and gave the month when she first discovered her condition.

We are impressed that her station in life did not afford many social and intellectual

advantages. In this respect, however, she is not different from a large segment of our American people.

In this State rape is recognized as a crime under the common law for which a penalty has been fixed. Title 14, Sec. 395, Code 1940.

■ The definition, therefore, of what constitutes rape is left to the common law. As there defined, it is the unlawful carnal knowledge of a woman, forcibly and without her consent. It is defined also by our courts as "the carnal knowledge of a woman forcibly, and against her will." Hooper v. State, 106 Ala. 41, 17 So. 679, 680; Harris v. State, 2 Ala.App. 116, 56 So. 55.

At one time the English courts held that under the common law it was not rape to have carnal knowledge of a female, without respect to age, if she consented. In his work on "Pleas of the Crown" Sir Mathew Hale expressed the view that sexual intercourse with a female under the age of twelve, though she consented, constituted rape. A later British statute made sexual intercourse with females under ten years of age punishable, whether the act was with or without the consent of the child. This statute came to be regarded as the common law and came to us in this form.

In our current code we have Sections 398 and 399, Title 14, which deal with carnal knowledge of girls under twelve and females over twelve and under sixteen years of age. These statutes which create crimes of a kindred nature to rape are nevertheless separate and distinct offenses from that of rape as known to our law. Vasser v. State, 55 Ala. 264; Hull v. State, 232 Ala. 281, 167 So. 553.

The instant inquiry, therefore, must be determined on the basis of whether or not the prosecutrix was so mentally impotent that she could not under the law of rape yield her intelligent consent to the act of sexual intercourse. It is lack of mental capacity, and not lack of moral quality and strength, which is in question.

A general discussion of the question may be found in 52 C.J., Rape, Sec. 31, p. 1022; 44 Am.Jur., Rape, Sec. 10, p. 907; Vol. 1, Wharton's Criminal Law, Sec. 695, p. 926.

We find only one case in our jurisdiction that lends any aid to our review.

In McQuirk v. State, 84 Ala. 435, 4 So. 775, 5 Am.St.Rep. 381, the court considered the refusal of these charges:

"2. 'If the jury have a reasonable doubt that the act was done with force, they must acquit the defendant, although the prosecutrix is a woman of weak mind.' "

"3. If the jury have reasonable doubt that the defendant did the act with or without the consent of the prosecutrix, although they may believe there was force used, and that she was a woman of weak mind, they must acquit the defendant."

In response Justice Somerville writing for the court held:

"The mere fact that a woman is weak-minded does not disable or debar her from consenting to the act. It has been said that a woman with a less degree of intelligence than is requisite to make a contract may consent to carnal connection, so that the act will not be rape in the man; but, 'if she is so idiotic as to be absolutely incapable of consent, the connection with her is rape.' 2 Bis.Crim.Law, § 1121. The principle, as expressed by another high authority, is that 'carnal intercourse with a woman, incapable, from mental disease (whether that disease be idiocy or mania,) of giving consent, is rape.' 1 Whart.Crim.Law, § 560.

"The evidence tends to show that the prosecutrix was weak-minded merely, not that she was idiotic or so non compos as to be incapable of giving consent to the act of carnal connection with the defendant. In view of this fact, and the principles above announced, we are of opinion that the circuit court erred in refusing the second and third charges requested by the defendant."

In a number of states, special statutes have been enacted which by express provisions make it unlawful for a male person to have carnal knowledge of a woman who is incapable on account of mental deficiency to give her legal consent to the act of sexual intercourse. We do not have such a statute in this State.

In the case of Lee v. State, 43 Tex.Cr. R. 285, 64 S.W. 1047, 1048, the court con-

382

strued a statute which contained this provision, "being so mentally diseased at the time as to have no will to oppose the act." It was held that the mind of the woman must be so impaired as to be incapable of yielding an intelligent assent to what was being done and if she "is capable of yielding to persuasion, and is overcome by that, she is not the subject of rape, under this statute." And the court further said that the provision "was intended to protect idiots, imbeciles, and insane,—not persons who naturally or from association have become depraved, but those only whose minds are so impaired by disease as that they have no will power to oppose the act of carnal intercourse."

In Williams v. State, 125 Tex.Cr.R. 477, 69 S.W.2d 418, it was held in effect that mere mental deficiency was regarded as not bringing a female within the same provision supra, but she must be so mentally deranged as to have no will power to assent or dissent.

The Oklahoma court held that legal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences, and that "this degree of intelligence may exist with an impaired and feeble intellect, or it may not." Adams v. State, 5 Okl.Cr. 347, 114 P. 347.

█ The rule of law applied by English courts in cases where the female is shown to have been idiotic or imbecile is the one generally followed by the courts in this country. The rule is that if the female is so idiotic as to be incapable of expressing any intelligent consent or dissent, or of expressing any judgment in the matter, the offense is rape. Queen v. Ryan, 2 Cox, C.C. 115; Reg. v. Fletcher, 8 Cox, C.C. 131.

In Regina v. Connolly, 26 U.C.Q.B. 317, the earlier English decisions are reviewed and the rule is there stated: "In the case of rape of an idiot or lunatic, the mere proof of connection will not warrant the case being left to the jury. There must be some evidence that it was without her consent—e. g., that she was incapable from imbecility of expressing assent or dissent; and if she consent from mere animal passion it is not rape."

The Supreme Court of Iowa in State v. Haner, 186 Iowa 1259, 173 N.W. 225, reviewed a judgment of conviction for rape which was based on this statute (we quote only pertinent parts): "If any person * * * have such carnal knowledge of an idiot or female naturally of such imbecility of mind or weakness of body as to prevent effectual resistance, he shall be punished * * *."

The court gave this interpretation: "The term 'imbecility of mind' is one hardly capable of exact or comprehensive definition. It is generally applied to a lack of normal mentality not so complete or absolute as exists in the condition we call 'idiocy,' but greater and more marked than in cases to which in ordinary parlance we apply the milder term 'feeble-mindedness.' Though this distinction or gradation may not have recognition in the terminology of science, it does exist in popular usage, and has had judicial approval."

By examining the facts in this case it will be found that they bear striking analogy to those in the case at bar.

We quote the following from the opinion in the case of Bloodworth v. State, 6 Baxt. 614, 65 Tenn. 614, 32 Am.Rep. 546: "As to the capacity of the girl to consent to what was done, or to refuse or oppose it, owing to mental incapacity, the evidence is meager and not entirely satisfactory. The only evidence bearing on the question directly is that of Dr. Menees, who says that he had been a practicing physician for seventeen years, and had visited the family of Morris at intervals during that period, and had waited on Eliza Ann when she was sick. He states that 'she was a woman of very weak mind, and almost an idiot.' He gave it as his opinion that she had enough mind to consent to have intercourse with a man, but that he thought she did not have mind enough to know what that consent was, etc. This is, as we have said, very unsatisfactory evidence as to the capacity of the party, and from it we could hardly be justified in concluding that she was an idiot, wholly incapable of assenting to the act complained of; nor could a court or jury well be called on to say with pre-

cisely how much intelligent comprehension of the nature and consequence of an act a party under such circumstances must have acted in order to make out the element of this offense, given in the statute, of its being forcible and 'against her will.' "

We are fully aware that we are not faced in the instant case with any specific statute as is true in some of the authorities which we have cited and discussed. However, the logical reasoning is applicable. Fundamentally, either with or without the statute, the question to be considered and determined is whether or not the mental condition of the female is so impaired that legal consent cannot be exercised or given.

We think that a fair analysis of the cases which have treated this question and sound reason lead to the conclusion that consent which will be held sufficient assumes a mental capacity in the person consenting to the extent that she understands and appreciates the nature of the act of sexual intercourse, its character and the probable or natural consequence which may attend it.

The terms "against her will" and "without her consent" are in many respects synonymous. "Against her will" presupposes and assumes the existence of a will in relation to the act in question. The authorities hold that by the administration of drugs, medicines, intoxicating drinks or other substances a female may be rendered incapable of consenting or assenting. In this event her power to will has been destroyed just as much so as if she had been made unconscious by a blow.

We know and hear of people whose mental powers to perceive and grasp are impaired along certain avenues of thought and yet whose perception is fairly normal in other respects. Lunacy implies a weakness or perversion of the mind, but not necessarily its destruction. Idiocy, even, is generally accepted to consist in only a defect or sterility of the intellectual powers. The degree, of course, varies.

As we have indicated hereinabove, the evidence relating to the mental impairment of Miss Layton was deducible solely from the fact that, although she attended school for a number of years, she reached adulthood without the ability to read and write and tell the time of day.

The appellant denied while testifying in his own behalf that he had sexual intercourse with the prosecutrix. His evidence supported the claim of an alibi. On this disputed factual issue a jury question was clearly posed.

The question of instant concern is raised by the request for written instructions and a motion for a new trial. It is our considered conclusion that the prosecution failed to sustain the burden of proof imposed on the State and that the judgment of the court below is due to be reversed and the cause remanded. It is so ordered.

Reversed and remanded.