Rape; sentence: thirty years imprisonment.
The appellant was indicted and convicted under the general rape indictment: Title 15, § 259 (89), Code of Alabama 1940. The prosecutrix was alleged to be approximately fourteen years old at the time of the incident.
There was testimony presented at trial by relatives of the prosecutrix to the effect that she was retarded and attended a school for retarded children. There was also a statement made by prosecutrix's mother which indicated that a doctor had told her that the prosecutrix had a mind of a two year old. The age of the prosecutrix at the time of the doctor's hearsay pronouncement was not specified. There was absolutely no medical testimony presented as to any mental incapacity on the part of the prosecutrix.
There was substantial evidence presented from which the jury could find the following facts:
The appellant, with permission of the prosecutrix's father, took the prosecutrix on an alleged shopping tour. They were to be accompanied by the prosecutrix's younger brother and sister, however, the appellant would not allow the brother and sister to go along. When the appellant and the prosecutrix returned from the shopping tour, the prosecutrix had a substantial amount of blood on her and her clothes. The appellant had blood on his coat and the prosecutrix was bleeding from the area of her vagina. The appellant fled the premises when questioned concerning the whereabouts of the fruits of the shopping tour.
At trial, Dr. Rufus C. Smith, Jr., testified that he examined the prosecutrix immediately after the alleged rape. There were some slight abrasions around the opening of the vagina. He testified that such abrasions were consistent with the penetration of the prosecutrix's vagina by a male sex organ. Dr. Smith said the abrasions were also consistent with self-manipulation or the utilization of another type of blunt object. The examination did not reveal the presence of sperm.
The prosecutrix then testified on behalf of the State. The relevant portion of her testimony reads as follows:
 "Q. All right. But when he got you out in the woods, he put you down on the ground?
"A. (Nodded head in affirmative.)
 "Q. Did he take your pants off of you and your underpants?
"A. (Nodded head in affirmative.)
"Q. Did he get up on top of you?
"A. (Nodded head in affirmative.)
"Q. And did he put something in you?
"A. (Nodded head in affirmative.)
"Q. Did it hurt?
"A. Yes.
"Q. It hurt you?
"A. (Nodded head in affirmative.)" *Page 327 
The preceding facts and testimony have been presented in the light most favorable to the State. The appellant put on evidence, which if believed by the jury, would have explained, controverted, denied and impeached the evidence presented by the State. The appellant made timely and appropriate motions to exclude the State's evidence and for a new trial.
It should be clearly noted at this point that the prosecution elected to try this appellant on the common law charge of rape and not on the "statutory rape" charge of carnal knowledge of a girl over twelve and under sixteen years of age pursuant to Title 14, § 399, Code of Alabama 1940. In so doing, it was necessary to prove each element of that common law offense, i.e. (a) an unlawful carnal knowledge of a woman by the appellant, and (b) that such carnal knowledge was committed forcibly and without her consent. Title 14, § 396, Code of Alabama 1940.
 I
An essential element of the offense of rape is to prove carnal knowledge by the actual penetration of the female sex organ by the male sex organ. Reynolds v. State, 274 Ala. 171,146 So.2d 85 (1962). Other than Dr. Smith's assertion that the abrasions were consistent with penetration by a male sex organ, there was not one iota of evidence regarding what was inserted into the vagina. Dr. Smith testified that the abrasions were also consistent with insertion of objects other than a male sex organ.
The facts in Hacker v. State, 31 Ala. App. 249, 15 So.2d 336
(1943) are loosely analogous to those in the present case. There the prosecutrix was seven years old. She testified as follows:
 "`. . . When he got on top of me down there under the bridge he had me under him and he was lying all stretched out on top of me. He took my pants down that I had on and he was on top of me then and all stretched out. I felt something push inside me down between my legs and I felt it four times and it hurt me bad. . . . It felt like something stiff that he was putting in me down there. . . .'"
In Hacker, the Court held that whether the penetration was accomplished with a male sex organ was a question of fact for the jury. We, therefore, conclude that the jury in the instant case could fairly infer that there had been a penile penetration.
 II
Other essential elements of rape are that the act be committed forcibly and against the consent of the woman. The instant record is void of any reference to force or lack of consent. It should be noted that in Hacker, supra, there was overwhelming proof of force and lack of consent.
If the prosecutrix was so mentally impotent as to be incapable of consent, then it was not necessary to prove force or lack of consent. It must be proved beyond a reasonable doubt that the prosecutrix was so idiotic as to be incapable of expressing any intelligent consent or dissent, or of expressing any judgment in the matter. The capacity to consent to intercourse presupposes the mental capability to form an intelligent opinion on the subject, with an understanding of the act, its nature, and its possible consequences. Stephensonv. State, 35 Ala. App. 379, 48 So.2d 255, cert. denied 254 Ala. 313, 48 So.2d 259 (1950).
In the present case, the jury could have concluded that the prosecutrix was retarded and attended a "retarded school." The jury could also observe the demeanor of the prosecutrix as she testified. The State contends the jury could infer that the prosecutrix did not have the mental capacity required to consent. From the record it is obvious that the prosecutrix did not possess the mental capabilities of a normal teenager. However, if the prosecution will carefully read Judge Carr's scholarly opinion in Stephenson, supra, and the cases therein cited as examples, it will become evident that the State failed to prove either lack of consent or lack of mental capacity to consent. *Page 328 
 III
There was not sufficient evidence presented at trial upon which the jury could base a verdict of guilty beyond a reasonable doubt. The jury in order to convict the appellant would have had to believe the prosecutrix's testimony and infer
that the prosecutrix was an idiot or incapable of consenting to sexual intercourse. While the jury may infer facts from other established facts, mere suspicion, surmise or conjecture as to what might have occurred will not sustain a conviction. Hand v.State, 26 Ala. App. 317, 159 So. 275 (1935).
Here the State seeks to prove all the material elements of a crime by inference. The inferences were based upon the mental ability of the prosecutrix. The seemingly contradictory nature of the inferences is manifest. Expert testimony on the mental capabilities of the prosecutrix was sorely needed. A layman's testimony simply to the effect that the prosecutrix is retarded is not a sufficient basis from which to draw the inferences sought by the State.
In Stephenson, supra, Judge Carr recites from Bloodworth v.State, 6 Baxt. 614, 65 Tenn. 614, 32 Am.Rep. 546, wherein the testimony of the prosecutrix's family physician failed to establish that she was mentally incapable of consenting. Referring to the physician's testimony in Bloodworth, we find:
 ". . . He states that `she was a woman of very weak mind, and almost an idiot.' He gave it as his opinion that she had enough mind to consent to have intercourse with a man, but that he thought she did not have mind enough to know what that consent was, etc. This is, as we have said, very unsatisfactory evidence as to the capacity of the party, and from it we could hardly be justified in concluding that she was an idiot, wholly incapable of assenting to the act complained of; nor could a court or jury well be called on to say with precisely how much intelligent comprehension of the nature and consequence of an act a party under such circumstances must have acted in order to make out the element of this offense, given in the statute, of its being forcible and `against her will.'"
We should not be understood to hold that in a proper case the jury might not draw the above inferences. A prosecutrix might be competent to testify and that testimony might inferentially prove that sexual intercourse took place between the prosecutrix and a defendant. The State then might, afterproducing sufficient evidence, contend that the same hypothetical prosecutrix was an idiot or mentally incapable of consenting to sexual intercourse. Not allowing the State to pursue such a course would in many cases amount to a grant of immunity to those fiends who prey on mentally deficient women.
When the prosecutrix was called to testify, the appellant's counsel approached the bench. There is no record of what was discussed. The prosecutrix then testified. No objection was made to her incompetence as a witness. We assume that on retrial a more in depth exploration of the prosecutrix's competence to testify will be made.
If the State was unprepared to prove the lack of mental capacity to consent on the part of the prosecutrix, an indictment under Title 14, § 399, supra, would have pretermitted the issue of consent. However, since the State chose to proceed under the common law offense, it must meet the full measure of proof in order to sustain a conviction. Failing to do so entitles the appellant to a new trial.
REVERSED AND REMANDED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., and BOWEN W. SIMMONS, Supernumerary Circuit Judge, concur.
CATES, P.J., not sitting. *Page 329