This is an appeal by Reuben Long, an indigent, who was convicted of rape by a circuit court jury in Macon County, and sentenced to ten years imprisonment.
During trial, appellant filed a motion to exclude the State's evidence, and that motion, along with his subsequent motion for a new trial, was denied. An application for probation was made and denied and notice of appeal was given.
The pertinent facts in this case are that the victim was a student at the Macon County Retardation Rehabilitation Center, whose director is Mrs. Sally Lowe Richardson. Mrs. Richardson testified that the school is designed for people who are retarded and physically handicapped. She stated that on May 21, 1976, the victim was a student at the center, classified as "educable mentally retarded," and was considered a person of "mild retardation."
Mrs. Richardson stated that the appellant, Reuben Long, was employed by the center, and that May 21st was his "last day of employment."
The victim's mother testified that her daughter was twenty years of age at the time of the incident and had been attending "Retarded and Rehabilitation Activities Center" for approximately three years. Her mother stated that she had to "see for her because she don't know. . . . She don't understand nothing."
Her mother testified that the day in question was the last day of school and that her daughter usually arrived home "about twenty minutes after three" in the afternoon. On this particular day, however, she arrived later than usual. Her mother stated that her husband, the victim's father, *Page 356 
was on the porch at the time the bus stopped to allow her daughter to get off, but that she [the victim's mother] was not on the porch at the time. When she learned from her husband that the bus was approaching, she went to the porch but was unable to stop the bus after her daughter got off.
After the victim left the bus and came to the house, her mother stated that she had noticed that "[s]he wasn't properly dressed, her clothes hanging all off her — they were dirty, and I asked her what had happened." Her mother stated that the victim had then made a complaint of what had occurred. Her mother said that she then asked her daughter to undress. Later, her daughter showed her the location at which the offense had occurred. The next day the mother carried the victim to Dr. Storey in Farmville, Alabama.
The victim testified that she was twenty-two years old and attended the M.C.C.R. School which Mrs. Richardson was "the head of." She acknowledged that she had been going to the school for the last three and a half years.
During the trial, she identified the appellant as the person who drove the school bus and said that he was driving the bus on the last day of school, when the rape occurred. Further, she said that on the day of the offense she was the last student on the bus, and that the appellant's son was on the bus at that time. She stated that after the only other student had left the bus, the appellant told his son, who was riding with them, "to get off and take a walk."
At that time the bus was "on the dirt road," which she acknowledged, was not the road regularly used when going to or from school, and it was not near where she lived. She stated that she was sitting on the last seat on the bus at the time. When his son left the bus, the appellant told the victim to take her clothes off. She stated that she refused and "he just took them off." She said that he did not take her blouse off but did take her underpants off.
According to the victim, "he [the appellant] put his privates in me . . . the front part." She acknowledged that "in front" meant between her legs. Further, she stated that she "was trying to fight him."
The victim stated that, after the sexual act, the appellant put her clothes back on and asked if she was going to tell her mother. When she responded that she was, "he said I'd better not, better not tell."
At that point, the appellant's son returned to the bus and said "somebody was coming." The appellant then told his son to let the hood of the bus down and drove the bus away.
The victim said that she was taken home and that, when she left the bus, she saw her mother. She stated that she told her mother what had occurred and then showed her mother the location at which the bus had been stopped and the act committed. She also said that her mother took her to a doctor.
Mrs. Richardson was recalled and presented, over defense objections, certain official school records alleging that psychological tests had been given to the victim. Portions of these documents, indicating that the victim had an I.Q. of 32 or below, were admitted into evidence over defense objections. Moreover, the trial court took judicial notice of the fact that most lay persons are familiar with the term I.Q.
Julia Battle stated that, on the day in question, she recalled seeing a bus from the Macon County Rehabilitation Center on the road near her house, and that the bus did not usually travel that particular road.
At the completion of this witness' testimony, the State rested its case and the defense made a motion to exclude the State's evidence. The motion was denied and the State reopened its case and recalled Mrs. Richardson. She testified, over defense objections, that the victim was not able to consent to sexual intercourse or to appreciate the consequences of such an act. During cross-examination she admitted that the school taught sex education as a regular part of its curriculum. *Page 357 
At the end of Mrs. Richardson's testimony, the State rested and defense called the appellant, Reuben Long. He testified that he was employed by the Macon County Retardation Center as a bus driver and that the victim was one of nineteen students in his care. Further, he stated that she was the last passenger to be transported that day. The appellant testified that, on the day in question, he delivered the victim to her home at the regular time and did not at any time rape her or attempt to have sexual intercourse with her.
At the end of the appellant's testimony, the defense rested and the case was submitted to the jury.
 I
The appellant contends that the State failed to establish a prima facie case of rape. He argues that there was no evidence of force, coercion or actual penetration.
Rape has been defined as the unlawful carnal knowledge of a female by a male, forcibly and against her will. Thomas v.State, 53 Ala. App. 232, 298 So.2d 652. The degree of force necessary for a conviction need not be such as to place the victim under such reasonable apprehension of death or bodily harm as to overpower her will. It is sufficient that the female was under such duress that the act was accomplished against her consent. Brummitt v. State, Ala.Cr.App., 344 So.2d 1261. According to all authorities, actual penetration of the female's sex organs is necessary to constitute carnal knowledge, which is synonymous with sexual intercourse. Harrisv. State, Ala.Cr.App., 333 So.2d 871. Penetration to a particular extent is not required but "some degree of entrance of the male organ within the labia pudendum is essential."Harris v. State, supra; 75 C.J.S. Rape § 10b. Whether such penetration is accomplished is a question of fact for the jury.Hacker v. State, 31 Ala. App. 249, 15 So.2d 336.
The testimony recited above shows that there was penetration and that it was without the victim's consent.
From the record, the following questions were asked of the victim:
 "Q. All right, where, what part of you did he put his thing we call penis in?
"A. Front.
"Q. Is that down between your legs?
"A. Yes.
"Q. Is that where you wee-wee?
"A. Yeah.
. . . . .
 "Q. After he got through doing what he was doing to you, what did you do and what did he do?
"A. I was trying to fight him."
In view of the foregoing, we believe there was sufficient evidence from which a jury could determine whether there was penetration and whether it was accomplished against the victim's will. Hacker v. State, supra; Brummitt v. State, supra.
In our judgment, the facts were sufficient to prove the elements of the offense and would support the jury's finding of appellant's guilt. Therefore, it is our judgment that the denial of the appellant's motion to exclude was proper.
 II
The appellant maintains that testimony by a lay witness as to the victim's mental capacity is not admissible without a "proper predicate" being laid. He further claims that the State failed to prove that the victim was "mentally incompetent to give consent to intercourse, if indeed intercourse occurred."
Appellant argues that the State endeavored to prove, through testimony of the director of the Macon County Retardation Rehabilitation Center concerning documents purported to be official records of the school, that the victim was incompetent to give her consent. He insists that the court was in error in allowing State's Exhibit A, a statement indicating the victim's intelligence quotient, to be entered into evidence. *Page 358 
We have searched the transcript of evidence and have found that the appellant emphatically denied having intercourse with the prosecutrix.
From the record, the following questions were asked of the appellant:
"Q. All right, did you in any way touch [the victim]?
"A. No, I didn't.
"Q. Did you have sex with [her]?
"A. No, I did not.
"Q. Did you take her clothes off?
"A. No, I did not.
"Q. Did you rape [her]?
"A. No, I did not.
 "Q. Did you in anyway have any kind of physical contact with her?
"A. No, I did not."
Under these facts, the issue of the victim's consent is not presented for this court's review. The appellant does not claim that the act occurred as a result of the victim's consent, but is maintaining his innocence in the strongest terms. If the evidence concerning the State's Exhibit A was in fact error, the appellant did not "demonstrate that such error was probably injurious." Kennedy v. State, 291 Ala. 62, 277 So.2d 878.
Also, we note that in Jenkins v. Avery, 257 Ala. 387,59 So.2d 671, the Supreme Court of Alabama allowed the admission of school records which were identified by the custodian thereof. There, the custodian was allowed, in a suit to quiet title, to testify to the content of school records belonging to the defendant.
We also note that § 12-21-43, Code of Alabama 1975, states that:
 "Any writing or record . . . shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business . . ."
For the purpose of that section, "business" is defined as "a business, profession, occupation and calling of every kind." §12-21-43, supra. See also, Love v. State, 23 Ala. App. 363,125 So. 685.
In conclusion, we note that no objection was raised to the victim's competence to testify at trial.
 III
Finally, the appellant insists that the trial court erred when it allowed the mother of the victim to testify regarding the details of the complaint and matters done outside the presence of the appellant.
The following testimony concerns the victim's complaint to her mother:
 "Q. All right, at that time and place, did she make a complaint to you?
"A. She did, said he slapped her.
"MR. DAVIS: Your Honor, I object to that.
 "THE COURT: No, don't say what he said, all we can put in, and that's what he's objecting to is the complaint that she made a complaint.
. . . . .
 "Q What did you see, observe when you made her [the victim] undress?
"A. That someone had had a intercourse which was him.
 "MR. DAVIS: Your Honor, I object to that and I ask that it be stricken and I ask for a mistrial.
 "THE COURT: Overrule your motion for a mistrial, now disregard the statement, you can understand that she wouldn't know anything about whether they had intercourse with the defendant or not. You understand that, strike that from the record.
 "MR. DAVIS: I ask for a mistrial, the witness and the prosecutor are ignoring the instructions to the court in deliberating and improperly asking questions.
 "THE COURT: You ought not to do that now, you don't know that he did it.
 "MR. YOUNG: Your Honor, she has never been in court in her life.
"MR. DAVIS: But you have though.
 "THE COURT: I'm just telling the jury now that you understand that her statement there is stricken from the record. She shouldn't have said it, but she didn't know." *Page 359 
A motion for a mistrial implies a miscarriage of justice, and is only granted where it is clearly manifest that justice cannot be insured. Crouch v. State, 53 Ala. App. 261,299 So.2d 305. Such a motion does not serve the same function as an objection or a motion to strike and is not ordinarily used to indicate a mere erroneous ruling of law. Diamond v. State, Ala.Cr. App., 363 So.2d 109.
Under the foregoing facts, it appears that the trial judge took curative steps to insure that unresponsive answers would not prejudice the accused. In the first instance, the witness was admonished and additionally, in the second, the jury was told to disregard the response. If any possible prejudice was generated by the witness' remarks, it is our judgment that prompt curative action by the court was sufficient to remove it.
We have examined the record, including the transcript of evidence in this case and have found no prejudicial error. Therefore, the judgment of conviction by the Macon Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.