381 So.2d 1019 (1980)
Tarzaron ANDERSON
v.
STATE of Mississippi.
No. 51828.
Supreme Court of Mississippi.
May 28, 1980.
*1020 Walls, Buck & Irving, Robert E. Buck, Greenville, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court.
Tarzaron Anderson was convicted in the Circuit Court of Sunflower County for rape of a mentally incompetent female and was sentenced to serve a term of fifteen (15) years in the Mississippi State Penitentiary. He appeals from the sentence and judgment of the lower court and assigns six (6) errors in the trial.
There is little contradiction in the evidence. Mrs. Robbie Moore testified for the State that on July 26, 1977, she drove by the home of the victim in Moorehead, Mississippi, and she noticed a young black person [appellant was a black male fifteen (15) years of age] talking to the victim, who was a 16-year-old white girl. Mrs. Moore continued on her way across town, but, being aware of the victim's mental condition, she returned and observed parts of their lower extremities sticking out from behind an airconditioning unit located adjacent to the victim's home. She saw appellant get up, run to his bicycle, which was nearby, and ride off. Mrs. Moore found the victim lying nude on the ground and bleeding profusely from her vagina. She called the victim's mother, who was inside the house, and the child was taken to the hospital.
Appellant was apprehended, was identified as the assailant by Mrs. Moore, and he freely and voluntarily admitted the act. Appellant testified at the trial. His testimony did not contradict that of Mrs. Moore or his statement given to the officers, except that he claimed the victim stopped him and asked him to engage in the sexual act. Appellant described the victim to Officer William Staten as being "the one that waves real funny and the one that's kind of off in the head."
*1021 Physical examination of the victim by Dr. Walter Rose in the emergency room at the North Sunflower County Hospital reflected that she was bleeding profusely from her vagina, that blood had run down her legs and feet and had dried in those areas, and that she was still bleeding from a tear in her hymen at the time of his examination. She also had a large blood clot on the left side, and at the entrance, of her vagina. Dr. Rose administered a local anesthetic and repaired and sutured the torn areas. He also testified that live sperm was found in the victim's vagina. It was uncontradicted that the victim had been retarded since birth, she could speak only in monosyllables, and had the mind and intellect of a four-year-old child.
Appellant introduced evidence to the effect that he, too, was retarded, that his IQ was only 31, that he was enrolled in special education classes after about the third grade, and that he did not have the intellect to distinguish right from wrong. On the contrary, Dr. Donald Guild and Dr. C.S. Stanley, an eminent psychiatrist and psychologist, respectively, at Mississippi State Hospital, Whitfield, Mississippi, testified that appellant was of normal intelligence, had no evidence of psychosis or major mental disorder, had an IQ within normal range of 91, and was not retarded.

I.
Did the lower court err in overruling appellant's motion for a mistrial based on prejudicial testimony by the State's witness, Dr. Walter Rose?
Dr. Rose, the physician who examined the victim immediately after the incident, testified that he concluded from his examination of her that she had been forcibly penetrated and that such penetration was without her consent. Counsel for appellant objected to that part of the testimony and the objection was sustained. The trial judge instructed the jury to disregard the statement, appellant moved for a mistrial, which motion was overruled. Appellant argues that refusal to grant the mistrial was reversible error.
The indictment charged that the appellant "wilfully and feloniously did rape . . a female person over the age of twelve (12) years, the said ... being then and there so mentally incapacitated as to have no will to oppose the act of carnal knowledge... ."
Appellant complains that the stated testimony of Dr. Rose went to a crime other than that charged in the indictment, viz., rape by force, rather than rape of a person mentally retarded to the point where she could not consent to the act. He argues that forcible ravishment of a female without her consent, and sexual intercourse with a female mentally incapable of giving consent because of her mental incapacity, are separate and distinct crimes and he cites Wilson v. State, 221 So.2d 100 (Miss. 1969), Lee v. State, 322 So.2d 751 (Miss. 1975) and Bonner v. State, 65 Miss. 293, 3 So. 663 (1888). He quotes from Bonner v. State, supra, as follows:
"To charge one with an act which is unlawful because it is done with force and against the consent of another, and to convict him without proof of these essential elements of the crime, or to dispense with or supply such proof on such charge, on the theory that if there was consent, the party had not capacity to give it, would be a proceeding wholly inconsistent with the justice and fair dealing which should and does characterize the administration of public law." 65 Miss. at 296, 3 So. at 665.
However, the case sub judice is distinguished from those cases which involved a charge of forcible rape without consent, and where the proof did not support that charge, but indicated that the victim was mentally incapable of consenting to the act. Here, the proof shows without contradiction that the victim was mentally incapable of *1022 consenting to sexual intercourse. That proof, and other proof, established the crime of rape as charged. Had the victim here given resistance, or assent, the crime as charged would still have been established. The testimony of Dr. Rose simply indicated that a certain amount of force was required to effect penetration and that there was no consent on the part of the victim. This statement of Dr. Rose may be interpreted to mean that she was unable to consent on account of her mental retardation.
In Wilson v. State, supra, the Court held:
"Under the common law proof of sexual intercourse with a woman mentally incapable of consent because of imbecility, idiocy or insanity, establishes the crime of rape. Stephenson v. State, 35 Ala.App. 379, 48 So.2d 255 (1950); The Queen v. Ryan, 2 Cox Crim.Cas. 115 (1846); 75 C.J.S. Rape § 14b (1952). Where the victim in a rape case was mentally incapable of consent, it was not necessary to prove `actual force' beyond the mere force of penetration so that actual resistance was not necessary to constitute the offense... ." 221 So.2d at 103.
We are of the opinion that there was no error in the testimony of Dr. Rose for the reason stated immediately above, and for the further reason that the trial judge sustained appellant's objection to that testimony, which had the effect of removing any taint resulting from it.

II.
Did the court err in overruling appellant's motion to quash the indictment on the ground that the offense charged is unconstitutional as applied?
Appellant contends that the offense charged in the indictment is unconstitutional because it is vague, imprecise and overbroad.
The charging part of the indictment, as stated hereinabove, specifically accused the appellant with felonious rape of the victim, who, at the time, was so mentally incapacitated as to have no will to oppose the act. We are of the opinion that the charge sufficiently notified the appellant of the accusation against him. In Burchfield v. State, 277 So.2d 623 (Miss. 1973), the Court stated:
"It has long been the law of this land that an accused person has a constitutional right to be informed of the nature and material elements of the accusation filed against him. All the authorities are to the effect that an indictment, to be sufficient upon which a conviction may stand, must set forth the constituent elements of a criminal offense. Each and every material fact and essential ingredient of the offense must be with precision and certainty set forth. 41 Am.Jur.2d Indictments and Informations § 69 (1968); 42 C.J.S. Indictments and Informations § 130 (1944). Not only must the essential elements of a crime be alleged, they must be proven beyond a reasonable doubt. In the Interest of Johnny Jenkins, 274 So.2d 143 (Miss. 1973)." 277 So.2d at 625.
The court correctly overruled appellant's motion to quash the indictment.

III.
Did the lower court err in permitting irrelevant and prejudicial examination of appellant by the prosecutor relating to prior sexual activity?
During cross-examination of the appellant by the district attorney, the question was asked him whether he had done it [had sexual relations] before. His answer was, "I ain't never done it before." The appellant objected and the court ruled by saying, "Well, he's answered that he never did it before." Appellant contends that the question and answer were prejudicial because *1023 his prior sexual activities were not at issue, and that the question and answer prejudicially reflected upon his character. We reject such argument because (1) appellant denied having engaged in previous sexual activities which certainly did not reflect upon his character, and (2) appellant claimed that he was mentally retarded and not responsible for his acts, and he obtained instructions from the court which submitted the question of his insanity to the jury. In relying upon the defense of insanity, he opened his entire background and life to questions relating to his mental competency.[1]

IV.
Did the court err by limiting the summation of appellant's counsel in prohibiting him from remarking upon the television series and novel "Roots," which is a literary and film work?
Appellant's counsel, in his oral argument, remarked that people have biases and prejudices instilled in them by their history and upbringing, and that the case should be decided solely on the evidence and the law. Counsel then attempted to comment upon, and argue, something about the television series "Roots" which had appeared shortly before the trial. The prosecuting attorney objected to that argument. In sustaining same, the court stated:
"Let the record show that during the course of this argument to the Jury, Counsel for the Defense made an effort to discuss with the Jury the television Series ROOTS, which has been showing on television this week. The State objected on the grounds that this television series has absolutely nothing to do with this trial and the argument is made for the purpose of inciting the Jury. The State's objection is sustained."
Appellant contends that he was unduly limited and restricted in his argument, but he does not cite authority on the question. Although an attorney has wide latitude in arguing his client's case to the jury, he must also stay within the record. We are of the opinion that the trial judge did not abuse his discretion in sustaining the objection and in declining appellant's counsel permission to comment upon the book Roots. The record does not indicate what counsel intended, or attempted, to say. There is no indication of any prejudice resulting to the appellant.

V.
Did the trial court err in refusing to grant appellant's requested Instruction D-9?
Appellant requested Instruction D-9, which was refused by the court, and which presented to the jury the question of whether or not appellant had knowledge of the victim's mental condition:
"D-9
"The Court instructs the jury that even if you find that Tarzaron Anderson had sexual intercourse with .. . and that she was so mentally incapacitated as to have no will to oppose the act of sexual carnal knowledge, you must further find beyond a reasonable doubt that Tarzaron Anderson had knowledge of the mental condition of ... before you can return a guilty verdict. If the State fails to prove beyond a reasonable doubt and to a moral certainty such knowledge on the part of Tarzaron Anderson, you must find Tarzaron Anderson, not guilty."
Along with other cases, appellant relies upon the recent case of Dotson v. State, 358 So.2d 1321 (Miss. 1978), where the lower *1024 court refused to grant an instruction on the requirement of scienter or knowledge on the trial of a person charged with aggravated assault of a police officer. In Dotson, a police officer was driving an unmarked automobile, was not in uniform, and there was nothing about him to indicate that he was a law enforcement officer. It was held scienter or knowledge that the person assaulted as a police officer was crucial to the charge, under those facts.
However, in the case sub judice, the trial court granted the State Instruction S-4,[2] which presented the question to the jury. When all instructions are read and considered together, the law was correctly submitted. Rayburn v. State, 312 So.2d 454 (Miss. 1975); Shields v. State, 244 Miss. 543, 144 So.2d 786 (1962).

VI.
Did the lower court err in sentencing appellant to fifteen (15) years in the state penitentiary rather than sentencing him according to Mississippi Code Annotated Section 43-21-39 (1972)?
Mississippi Code Annotated Section 43-21-39 (1972) provides a discretionary sentencing procedure, which the circuit court may use in cases where a child has been tried and convicted as an adult. According to that statute, the court may, in its discretion, commit the child to a state institution established for delinquents, or to the county jail for a term not exceeding one year, or the court may suspend sentencing for the probation period.
The imposition of sentence by the trial judge, if within the statutory limits, does not constitute cruel and inhuman treatment and is not an abuse of discretion. Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964), and many cases since Bond, have repeatedly upheld that principle. There is no merit in the assignment.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
NOTES
[1] This Court has held that where the defendant interposes the defense of insanity, the door is thrown wide open for the admission of evidence; every act of the party's life is relevant to the issue and admissible in evidence. Wilson v. State, 243 Miss. 859, 140 So.2d 275 (1962); Smith v. State, 95 Miss. 786, 49 So. 945 (1909).
[2] "The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt and to a moral certainty that... was a female over the age of twelve years, and that the defendant, Tarzaron Anderson, had sexual intercourse with ... by actual penetration of her private parts, and at the time of such sexual intercourse ... was so mentally incapacitated as to have no will to oppose the act of carnal knowledge, and at the time when the defendant, Tarzaron Anderson, either knew or reasonably should have known, that ... was so mentally incapacitated as to have no will to oppose the act of carnal knowledge, and at a time when the defendant, Tarzaron Anderson, knew the difference between right and wrong and was able to follow the right and understand and appreciate the nature and consequences of his act, then you cannot acquit the defendant on the ground of insanity, and you shall find the defendant guilty of rape."