**STATE of Iowa, Appellant,**

v.

**Timothy SULLIVAN, Appellee.**

**No. 63808.**

Supreme Court of Iowa.

Nov. 12, 1980.

Thomas J. Miller, Atty. Gen., Douglas F. Staskal, Asst. Atty. Gen., and Allan L. Goode, Asst. Webster County Atty., for appellant.

C. Joseph Coleman of Mitchell, Coleman, Perkins & Enke, Fort Dodge, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

The State's appeal requires us to interpret and determine the constitutionality of subsection 709.4(2), The Code 1979. Trial court, sustaining defendant's motion to dismiss a third–degree sexual abuse charge grounded upon this statute, held it unconstitutionally vague. We affirm in part, reverse in part, and remand.

July 12, 1978, defendant was charged by trial information with sexual abuse in the third degree, a violation of section 709.4, Code Supp. 1977. Conforming to a court ruling, the State later filed a bill of particulars that alleged defendant violated subsection 709.4(2).[1]

This appeal presents a facial constitutional attack on subsection 709.4(2), thus there are no controlling facts before us. We briefly refer to the alleged evidence the State was prepared to present, disclosed by papers filed here as part of the record, only to show the context in which the charge arose. The allegedly retarded 25–year–old victim was purported to have the mentality of an eight–to–ten–year–old person. She was described as knowing "that people get married and have babies, but ... doesn't know how they have babies." Defendant was alleged to have picked her up off the street in his truck, taken her to his mobile home where he had intercourse with her, and then dropped her back on the street, crying, with a vaginal laceration that required four sutures.

November 1, 1978, defendant moved to dismiss the charges against him, alleging subsection 709.4(2) was unconstitutional because it "is framed in terms which are impermissibly vague, in that its prohibitions are not clearly defined and causes persons of ordinary intelligence to guess at what is prohibited." By separate paragraph defendant specifically claimed the second portion of subsection 709.4(2), which prohibits a sex act with a person who "lacks the mental capacity to know the right and wrong of conduct in sexual matters," was "of such an intangible nature that it violates the due process clause of the Constitution of the United States."

June 27, 1979, trial court sustained the motion to dismiss, determining that, "Section 709.4(2) fails to pass constitutional muster and must fall as unconstitutionally vague." Trial court held there was no fixed answer to the "right and wrong" provision that would guide conduct in this area. More broadly, trial court found the statute had no "fixed standard which is clearly ascertainable," and that a standard which required a person "to search another's thought process to arrive at a conclusion which is subject to varied interpretation [could not] provide notice of the conduct prohibited."

The State's appeal brief asserted trial court erred in declaring subsection 709.4(2) unconstitutional in its entirety when only the second portion of the subsection was challenged. It pointed out the county attorney never so limited the prosecution, and that the bill of particulars specified defendant was charged with violating subsection 709.4(2), not merely the second clause in that subsection.

1. The full statute provides:

Sexual abuse in the third degree. Any sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in the third degree by a person when the act is performed with the other participant in any of the following circumstances:
1. Such act is done by force or against the will of the other participant.
2. *The other participant is suffering from a mental defect or incapacity which precludes giving consent, or lacks the mental capacity to know the right. and wrong of conduct in sexual matters.*
3. The other participant is a child.
4. The other participant is fourteen or fifteen years of age and the person is a member of the same household as the other participant, the person is related to the other participant by blood or affinity to the fourth degree, or the person is in a position of authority over the other participant and used this authority to coerce the other participant to submit.
5. The person is six or more years older than the other participant, and that other participant is fourteen or fifteen years of age.
Sexual abuse in the third degree is a class "C" felony.
(Emphasis supplied.)

Defendant filed an application for limited remand in which he alleged defendant was charged under the latter provision in subsection 709.4(2) and that this was the only provision trial court held unconstitutional. The State filed a "Partial Resistance" in which it agreed to the remand to trial court for the sole purpose of clarifying which portion of subsection 709.4(2) trial court intended to declare unconstitutional. The State challenged the various factual assertions and legal arguments contained in the application. Our order of remand was strictly limited:

It is hereby ordered that this case shall be remanded to the district court of Webster County for the following limited purpose: The district court shall promptly file a supplemental order stating whether its order of July 3, 1979, insofar as that order holds that section 709.4(2), The Code, is unconstitutionally vague, applies to the entirety of that statute or only to the final clause of the statute, to wit, that part of the statute making it unlawful to participate in a sex act with a person who "lacks the mental capacity to know the right and wrong of conduct in sexual matters."

Trial court's ruling following remand, filed April 3, 1980, stated that "[t]he ruling entered on July 3, 1979, although not specifically so limited, intended only to rule upon the constitutional issue as to the final clause, to wit: 'lacks the mental capacity to know the right and wrong of conduct in sexual matters.' "

The record and briefs now before us present the following issues: (1) whether trial court erred in holding the last portion of subsection 709.4(2) unconstitutionally vague and therefore void; and (2) if it is unconstitutional, whether the remainder of the statute remains viable and supports the charge as limited by the bill of particulars.

I. *Constitutionality of the "right or wrong" provision in subsection 709.4(2).*

Trial court's supplemental ruling makes clear it found only the following portion of subsection 709.4(2) unconstitutionally vague: "lacks the mental capacity to know

the right and wrong of conduct in sexual matters."

The State contends this clause simply restates, in a different way, the essential meaning of "consent," the operative word in the first part of the challenged subsection. The State asserts the total subsection, interpreted in light of our prior decisions, merely requires one who would engage in a sex act with another to ascertain that the other participant is not suffering from a mental defect or incapacity that would prevent him or her from knowing and understanding the nature and consequences of the contemplated act.

Defendant argues it is not possible for a reasonable person to read the last part of the subsection and understand what specific conduct is prohibited; that the "right and wrong of conduct in sexual matters" invokes different standards in different people and is too indefinite to serve as a basis for a criminal charge.

■ The principles we apply in this type of case are well established. We briefly refer to only a few. The person mounting the constitutional challenge on a legislative enactment carries the heavy burden to rebut a strong presumption of constitutionality. *See Miller v. Iowa Real Estate Commission*, 274 N.W.2d 288, 291 (Iowa 1979); *State v. Kueny*, 215 N.W.2d 215, 216 (Iowa 1974). If a statute can be made constitutionally definite by a reasonable construction, this court is under a duty to give the statute that construction. *State v. Williams*, 238 N.W.2d 302, 306 (Iowa 1976) (quoting *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996–97 (1954)).

■ The specificity due process requires of a penal statute, *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972), need not be apparent from the face of the statute but may be ascertained by reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage. *See Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979); *State v. Wil-*

liams, 238 N.W.2d at 307; *State v. Aldrich*, 231 N.W.2d 890, 894 (Iowa 1975); *State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974) (quoting *Kueny*, 215 N.W.2d at 217). Judicial decisions from other jurisdictions may be helpful. *Kueny*, 215 N.W.2d at 218.

■ In ascribing meaning to a criminal statute, "courts may properly consider the evil sought to be remedied and the objects or purposes the legislative enactment seeks to obtain." *State ex rel. Fulton v. Scheetz*, 166 N.W.2d 874, 877–78 (Iowa 1969); *see* § 4.6, The Code. Subsection 709.4(2) was enacted in 1977, as a part of the Iowa Criminal Code revision (*see* 1976 Session, 66th G.A., ch. 1245, § 904).

One commentator believes new subsection 709.4(2) "corresponds to the prerevised statute 698.3 [§ 698.3, The Code 1975] and existing case law, but the language is modernized." J. Roehrick, *The New Iowa Criminal Code: A Comparison* 77 (1977). *See also* J. Yeager & R. Carlson, 4 *Iowa Practice: Criminal Law and Procedure* § 205, at 59 (1979), commenting that the language of new subsection 709.1(2), a definitional subsection corresponding to subsection 709.4(2), was distilled from *State v. Haner*, 186 Iowa 1259, 173 N.W. 225 (1919). The *Haner* court interpreted the former version of the statute and described the legislative intent behind its provisions:

> [T]he protection of the law ... includes ... those who, while having some degree of intellectual power and some capacity for instruction and improvement, are still so far below the normal in mental strength that they can offer no effectual resistance to the approach of those who take advantage of their weakness to have or attempt sexual intercourse with them. This would ... include those who by reason of mental inferiority are incapable of knowing or realizing the moral quality of their act and are therefore also incapable of giving rational consent.
>
> On the other hand, it manifestly does not include those who are endowed with *mental capacity to know the right and wrong of their conduct in sexual matters*, but yield to intercourse under the influence of temptation or passion or inclination to vice.

186 Iowa at 1262, 173 N.W. at 226 (emphasis supplied).

■ An overview of section 709.4 in light of *Haner* discloses an intent to protect certain persons from nonconsensual sex acts. Generally, subsection one prohibits the use of force or the commission of a sex act against the will of the other participant. Subsection two protects persons who are so mentally deficient or incapacitated they cannot give a rational consent. Subsection three protects children, who of course are deemed to lack the mental maturity to give consent. The remaining subsections protect young persons in situations in which coercion or undue advantage might be applied.

Narrowing the focus to the specific provision under attack, we conclude that while its language may have aided the *Haner* court in explaining the application of the ancestor statute in 1919, in today's society it cannot, consistent with constitutional due process, be elevated to a defensible statutory standard. It is not enough, of course, that it obscures and might well defeat the purpose of subsection 709.4(2). The problem is that no matter how carefully circumscribed in a jury instruction, the challenged provision inevitably will result in convictions based not on the jury's view of the facts, but on its view of the morality of certain sexual conduct.

We grappled with a related problem in *State v. Hamann*, 285 N.W.2d 180, 182–85 (Iowa 1979), where the defendant, charged with murder, asked that we abandon the *M'Naghten* rule. Under scrutiny was the instruction on insanity:

> "Insane" or "insanity," as used in this instruction, means such a diseased or deranged condition of mind as to render a person either incapable of knowing or understanding the nature and quality of the act committed by him, *or incapable of distinguishing between right and wrong in relation to that act*.

285 N.W.2d at 183 (emphasis supplied). We rejected defendant Hamann's argument for

a subjective view of morality in the above right and wrong test:

> We believe the words "right" or "wrong" ... should be understood in their legal and not in their moral sense.
>
> In this world of revolutionary and often violent change it is futile to pretend that our society maintains a consensus on moral questions beyond what it writes into its laws. Contemporary philosophers and theologians ponder mightily but without notable success to reach agreement on the "general mores" of our society. National debates rage over a myriad of moral issues. Few are resolved with anything approaching unanimity. Impossible uncertainty over the so-called general mores renders the appreciation of morality a tool unfit for the task of measuring sanity."

285 N.W.2d at 183.

■ The moral "right" and "wrong" test is also an unfit tool in determining the mental competency of a person to consent to a sex act. Nor, in the sexual abuse situation, are we able to salvage the provision by ruling that the words should be applied in a legal, not a moral, sense. Subsection 709.4(2) addresses the mental capacity of the other sex act participant, not the defendant's mental capacity. A sex act, defined in section 702.17, is not illegal except in certain limited situations elsewhere identified. Sexual conduct, *qua* conduct, is not proscribed. Application of the "right" and "wrong" dichotomy in the legal context would require the victim to analyze his or her own mental capacity to assent to a sex act. We are not persuaded the legislature intended to impose such a test.

We therefore strike from subsection 709.4(2) as unconstitutionally vague the provision "or lacks the mental capacity to know the right and wrong of conduct in sexual matters." As a result, the question is whether there remains a viable statute expressive of legislative intent. *Aldrich*, 231 N.W.2d at 895; *see State v. Monroe*, 236 N.W.2d 24, 35 (Iowa 1975); § 4.12, The Code.

## II. *Constitutionality of the remainder of subsection 709.4(2).*

Defendant concedes "that if the portion of the subsection following the disjunctive is eliminated, the purpose of the statute can nevertheless remain standing and enforceable." The record suggests he would interpret the remaining part of subsection 709.4(2) to apply only in the case of a person so mentally deficient or incapacitated as to be unable to utter the words "yes" or "no."

■ We do not agree. Properly construed in light of the overall thrust of section 709.4, the obvious legislative intent, and our decision in *Haner*, we hold the remaining portion of subsection 709.4(2) protects not only completely incompetent persons but those who "while having some degree of intellectual power and some capacity for instruction and improvement, are still so far below the normal in mental strength that they can offer no effectual resistance to the approach of those who will take advantage of their weakness." *Haner*, 186 Iowa at 1262, 173 N.W. at 226.

In short, subsection 709.4(2) protects those who are so mentally incompetent or incapacitated as to be unable to understand the nature and consequences of the sex act. Such persons cannot give the meaningful "consent" required by the enactment. There is abundant authority from other jurisdictions to support our view that the capacity to "consent" in these situations presupposes an intelligence capable of understanding the act, its nature and possible consequences. *Stephenson v. State*, 35 Ala. App. 379, 383, 48 So.2d 255, 258, *aff'd*, 254 Ala. 313, 48 So.2d 259 (1950); *People v. Boggs*, 107 Cal.App. 492, 495, 290 P. 618, 619 (1930); *People v. O'Neal*, 50 Ill.App.3d 900, 906, 8 Ill.Dec. 871, 875-876, 365 N.E.2d 1333, 1337-38 (1977); *see* 65 Am.Jur.2d *Rape* § 9, at 766-67 (1972); Annot., 31 A.L.R.3d 1227, 1234-37 (1970).

We are unimpressed by defendant's arguments that the statute is rendered vague by its requirement that the alleged violator determine another's mental capacity. The potential offender must simply determine if his or her partner understands the nature

and consequences of engaging in the sex act. Under normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse. The potential offender who would engage in sex acts with a stranger may be required to ask questions to be "safe," just as he or she would be required to do in order to ascertain the other's chronological age to avoid prosecution under subsection 709.4(3).

The fact an erroneous judgment by an offender may still subject him or her to criminal sanction if the partner in *fact* does not possess the requisite mental capacity does not make the statute unconstitutional. This crime does not require knowledge or intent. As in the case of sexual abuse due to age status, the policies in support of protecting those who suffer mental incapacities outweigh the danger of mistake. *See Guinyard v. State*, 260 S.C. 220, 228–29, 195 S.E.2d 392, 395–96 (1973). We hold the standard imposed by subsection 709.4(2) is clear: To avoid the proscribed conduct one must refrain from performing a sex act with a person who is mentally incapable of understanding the nature and possible consequences of sexual activity.

It follows a trial information alleging a violation of subsection 709.4(2), The Code, as in this case, charges that the alleged offender has engaged in a sex act when the other participant is suffering from a mental defect or incapacity that precludes giving consent. The statute as truncated is constitutional. The charge will lie and should not have been dismissed.

Defendant asserts that by agreement of counsel the charge was intended to allege only the unconstitutional portion of the statute. Of course any post–remand activity directed to this result would exceed the jurisdiction of our limited remand. *State v. Johnson*, 298 N.W.2d 293, 294 (Iowa 1980); *State v. Hall*, 249 N.W.2d 843, 845 (Iowa), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). The trial information, the bill of particulars, and other papers before us do not indicate the charge was so limited.

We affirm trial court's finding that the last portion of subsection 709.4(2) is unconstitutional. We reverse trial court's dismissal of the charge, and remand for further proceedings in conformance herewith.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.