**STATE of Iowa, Appellee,**

v.

**William Cotalious JOHNSON, Appellant.**

No. 63930.

Supreme Court of Iowa.

Nov. 12, 1980.

Linda J. Thompson, Springfield, Mass., for appellant.

Thomas J. Miller, Atty. Gen., Thomas Martin, Asst. Atty. Gen., and Steven S. Hoth, County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

LeGRAND, Justice.

This case comes to us following a remand hearing ordered by this Court on defendant's appeal from his conviction of first degree murder. *See State v. Johnson,* 272 N.W.2d 480 (1978).

The underlying facts are stated in that opinion and need not be repeated here except as they bear on the limited issue involved. Defendant was convicted of having

murdered one Hobart Sharp in a Burlington tavern on September 18, 1976. Defendant admitted firing the shots which led to Sharp's death. He pled self–defense. He testified that Sharp assaulted him and that he feared for his life because he knew of Sharp's violent disposition and knew, too, that Sharp frequently armed himself with a knife. The present dispute is concerned solely with the testimony about whether Sharp was armed with a knife when he was slain. Defendant contends Detective Stevens purposely misstated certain facts and deliberately withheld exculpatory information when he testified Sharp "did not have any kind of a weapon at all." The defendant argues this deprived him of vital information for impeachment purposes and that he was consequently denied a fair trial.

Prior to trial, defendant had moved for production of written statements obtained by Detective Stevens from eleven witnesses. His motion was denied. On defendant's appeal from his conviction and sentence, we held this was error and remanded the case with the following statement:

> Concluding that defendant's motion to produce exculpatory material was improperly overruled, we remand for an in camera proceeding. . . .

> If it is found that exculpatory material was withheld from the defendant, then a new trial shall be granted. If not, the judgment shall stand affirmed. . . . Defendant's right to appeal from the trial court's in camera determination is preserved.

The in camera hearing was held. The court found adversely to defendant's claim. Defendant now appeals from that order.

■ On remand, the trial court is limited strictly to the terms of the order. There is nothing for the trial court to do except to conduct whatever proceedings are mandated and to make a determination thereon. *See State v. Hall*, 249 N.W.2d 843, 845 (Iowa 1977); *State v. Mayhew*, 183 N.W.2d 723, 725 (Iowa 1971). Defendant is similarly limited on the issues he can now raise. Much of defendant's brief seeks to convert this into a second appeal–a rehearing–on

issues already decided. We confine our review to deciding if exculpatory evidence was withheld. If it was not, our inquiry is at an end. *See Johnson*, 272 N.W.2d at 485.

Defendant alleges three errors. They are: 1) Did denial of defendant's motion to produce exculpatory evidence deprive defendant of the right to impeach material witnesses on the issue of self–defense, thereby violating his fourteenth amendment right to due process of law and his sixth amendment right to meaningful confrontation and cross–examination? 2) Was Detective Stevens' trial testimony false and misleading and was it knowingly permitted to go uncorrected thereby depriving defendant of due process of law in violation of the Fourteenth Amendment to the United States Constitution? 3) Did Stevens' testimony impermissibly relieve the State of its obligation to prove every fact essential to prove the offense beyond a reasonable doubt?

■ Obviously all of these assignments of error depend upon a preliminary finding that exculpatory evidence was in fact withheld. We need spend little time on the legal principles relied on by defendant. As we recognized in the first appeal, defendant is entitled to exculpatory evidence which the State has. If such evidence has been suppressed, defendant is entitled to a new trial. *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 32 (Iowa 1979); *State v. Johnson*, 272 N.W.2d at 485 and authorities there cited. Thus the decisive question is: Did the State withhold exculpatory material from defendant? We hold it did not.

■ Defendant argues vigorously that Detective Stevens deliberately expressed a categorical opinion in conflict with the written statements he had taken from eleven (or perhaps twelve) witnesses. We mention parenthetically that the hearsay issue concerning Detective Stevens' testimony was decided adversely to defendant on the first appeal. We point out, too, that defendant's pre–trial motion was for production of all signed statements. Three of those in issue here appear to be unsigned, but we have

reviewed them along with the others as though they were in fact signed.

We set out the officer's testimony relating to this matter:

Q. Now, what was your primary responsibility, Officer Stevens?

A. Of getting the witnesses in the bar and interviewing them and taking statements from them on what they observed?

Q. Did you do this?

A. Yes, I did.

Q. Where were most of the witnesses interviewed? Did you talk to any witnesses at the bar?

A. I briefly talked to two or three witnesses at the bar or more, but they were transported to the police station or asked to come to the police station. After we gathered their names, we took statements from them there.

Q. Did you then, or were you then responsible for obtaining statements from witnesses at the police station?

A. Yes.

Q. And approximately how many statements did you obtain as a result of your investigations?

A. I think I took twelve statements.

Q. In any of these statements, did you receive any information indicating that the defendant was armed with a weapon at the time he was shot?

. . . . .

A. Mr. Sharp, that was shot, did not have any kind of a weapon at all.

The following occurred on cross-examination:

Q. And then, as I understand it, you coordinated the investigation and took various statements from witnesses who may have had knowledge of the incident?

A. Yes, Sir, I did.

Q. And if I understood your testimony to Mr. Hoth, from the interviews that you conducted, you did not determine that anybody definitely said that Hobart Sharp had a knife in his hand?

A. I asked the witnesses that was at the station in interviewing them if they had observed Mr. Sharp with a knife, and I did not see one.

Q. It's a fact, is it not, many of the witnesses didn't see if he had anything in his hand or not?

A. Yes, Sir.

Q. Wouldn't you say it's about a fifty–fifty proposition among the witnesses who you interviewed as to whether they saw his hands or didn't see his hands?

A. I couldn't say that, Sir.

Q. What it boils down to is simply this, isn't it, that nobody knows if Hobart Sharp held a knife or not, based on your investigation now?

A. From talking to them and asking them if they seen a weapon or a knife on him, they said that they did not see a knife that he was holding.

Q. So it's your personal testimony, just to clarify this matter, that you are of the firm opinion that Hobart did not have a knife? You're telling this jury it was not possible for Hobart to be holding a knife?

A. From what the witnesses said, yes.

Q. That would include those witnesses that didn't see his hands.

A. Yes, Sir.

Defendant says he was denied exculpatory information because the written statements did not support Detective Stevens. Specifically, defendant insists Stevens testified *all* the witnesses said Sharp had no knife. Actually only one so stated. We believe defendant overstates the record. The detective's opinion was admittedly based on his investigation including statements taken from witnesses who didn't see whether or not Sharp had a knife. Of the eleven witnesses from whom statements were obtained, only eight were from persons in the bar when the shooting occurred. All of these except one were silent on the

knife question. No one stated Sharp *did* have a knife.

Contrary to defendant's argument, Stevens did not testify all the witnesses told him the victim was unarmed, nor was he asked that question. The question asked was whether *any* of them had done so. Cross examination by defendant's counsel (not his present lawyer) developed that many of the witnesses did not see whether or not Sharp had a knife. Counsel was well prepared to pursue this point because virtually all those who were in or around the tavern when the killing occurred were deposed by defendant before trial. So was Officer Stevens. Defendant's counsel had all the information—and more—which the statements would have provided. Under somewhat similar circumstances, we said in *State v. Hall*, 249 N.W.2d 843, 848 (Iowa 1977):

> Most of this information [which defendant claims was exculpatory] was available to defendant through minutes of evidence . . . and through Roberson's disclosed grand jury testimony. Defendant's counsel interviewed Allen before trial. It is clear the gist of her testimony was available to the defendant and used by him at trial.

As in *Hall*, this defendant had the benefit of any information the statements would have provided. The fact is there was not a shred of evidence that Sharp carried a knife. Not even defendant claimed he did; he merely said he was fearful he might be armed. His testimony on this point may be summarized by the following re-direct examination by defendant's counsel:

Q. William, Mr. Hoth [the County Attorney] has asked you again and again if you, in fact, saw a knife in Hobart Sharp's hand and you've answered him again and again that you did not see the knife actually in his hand.

My question is simply, did you think he had a knife?

A. Yes, sir, I definitely thought this.

Q. Was that based in any way on the knife which he had threatened with that morning? .

A. Yes, sir, it was.

Defendant's self-defense plea is not even dependent upon whether Sharp had a knife. The theory of the defense is that defendant *feared* he had one. If there is evidence that defendant's fear he was in imminent danger of death or great bodily harm was reasonable under the circumstances, he is entitled to have the issue submitted to the jury, as was done here. *See State v. Cruse*, 228 N.W.2d 28, 31 (Iowa 1975).

We conclude defendant was not denied exculpatory evidence. We find no denial of due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We believe what we said about that case in *State v. Hall*, 249 N.W.2d at 846–48 is applicable here. It seems clear beyond dispute that defendant's trial counsel did not seriously contend Sharp was armed; nor did he vigorously cross-examine on that point, although possessed of all the information defendant now says was vital to his defense. Defendant had a fair trial and is not entitled to a new one.

The judgment is affirmed.

AFFIRMED.