**STATE of Iowa, Appellee,**

v.

**Ronald LaWayne CHANCY, Appellant.**

**No. 85–1146.**

Supreme Court of Iowa.

July 23, 1986.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., Denver D. Dillard, Co. Atty., and Mary W. Vavroch, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and WOLLE, JJ.

LARSON, Justice.

The defendant, Ronald LaWayne Chancy, has appealed from his conviction of third-degree sexual abuse under Iowa Code section 709.4(2) (1983) (sex act with person mentally incapable of giving consent). He claims (1) the court erred in admitting testimony of a social worker and a school psychologist on the question of the victim's capacity to give consent; and (2) the evidence was insufficient to support the verdict. We affirm.

The statute under which Chancy was convicted provides:

*Sexual abuse in the third degree.*

Any sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in the third degree by a person when the act is performed with the other participant in any of the following circumstances:

. . . .

2. The other participant is suffering from a mental defect or incapacity which precludes giving consent, or lacks the mental capacity to know the right and wrong of conduct in sexual matters.

Iowa Code § 709.4(2) (1983).

There was evidence in the record from which the jury could find the following facts. On December 1, 1984, the victim rode her moped to her father's barbershop in downtown Center Point, Iowa. She left the barbershop and went next door to a filling station where several young men were present, including the defendant, Chancy. She and Chancy had a brief conversation. Chancy then told her to leave, and she did, on foot. Chancy caught up with her, in his car, and told her to get in. She complied, and Chancy drove into the country. He stopped and told the victim to undress. She complied, apparently without physical resistance. The defendant engaged in acts of oral and vaginal intercourse with the girl, then drove her back to town. The next school day, the girl spoke

about the event with two of her friends who, in turn, told the school social worker. An investigation followed, including a medical examination which revealed damage to her hymenal ring and the presence of seminal fluid.

Chancy does not challenge the identification by the victim nor does he deny the occurrence of the sex acts themselves. He attacks the conviction solely on the ground that the State had not established the "mental defect or incapacity" required by section 709.4(2).

In order to establish the victim's lack of capacity, the State called several witnesses, including Patricia Schultz, a social worker, and Barbara Oleson, a school psychologist. The court's admission of the testimony of these two witnesses raises the first issue.

## I. *The Expert Witnesses.*

Chancy challenges the testimony of the social worker, Patricia Schultz, on the ground she lacked the training and experience required to testify as an expert in comparing the mental capacity of the victim with other children. Prior to employment as a social worker with the Area Education Agency, Schultz had been employed as a therapist with Families, Inc., of West Branch, Iowa, a family counseling service. She also had worked for one year at the Iowa Security Medical Facility at Oakdale as a social skills program coordinator. She has a bachelors degree in social work and psychology, and a masters degree in social work. Her education, she testified, basically involved working with children and families. Her contact with the victim, who was a special education student, began in mid-October, 1984, when the victim had been referred to her in connection with the school's "effective education" program. Effective education, she testified, was a counseling program aimed at training students in appropriate behavior. The program was basically limited to special education students who, like this victim, are not well equipped to get along socially.

Schultz testified that she had worked with fifty to seventy-five other children of about the same age, and had observed their behavior. She testified she had observed what she considered to be normal behavior among children of this age range and compared their performance with that of the victim. She testified that the victim was functioning at about the nine to eleven-year-old level and that she had "real difficulty reading social situations or looking at a social situation and trying to figure out how it would be appropriate for her to behave or react or anything like that."

Schultz testified the victim was not just a slow learner but was in fact mentally retarded. A slow learner, she testified, has more academic skills.

A trial court, of course, has considerable discretion in the admission of expert testimony. *See, e.g., State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985); *State v. Hall,* 297 N.W.2d 80, 86 (Iowa 1980). Moreover, to establish an abuse of discretion, it must be shown that it was exercised on grounds clearly untenable or clearly unreasonable. *See State v. Pappas,* 337 N.W.2d 490, 493 (Iowa 1983); *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

Iowa Rule of Evidence 702, which embodies our prior case law, illustrates the broad scope of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

■ The primary objection to the testimony of Patricia Schultz was that she was not qualified as an expert in her field. We disagree. Her present employment involves individual counseling with students, and most of her work is done in contact with persons of this victim's general age. Her training and experience, we believe, qualified her to testify to these observations.

The second expert witness was Barbara Oleson, the school psychologist. As school psychologist, she evaluates students in the special education program, for purposes of placement. According to her testimony, the state of Iowa requires evaluations to be made every three years. These evaluations may or may not include psychological evaluations. Oleson testified that she last tested the IQ of the victim in September, 1982, over two years prior to the event in question. Based upon these tests, she determined that the full-scale IQ of the victim was sixty-four. This placed her in the "mildly mentally retarded" range. According to the witness, a child of the victim's age with an IQ below seventy is considered to be retarded. Based on her evaluation, Oleson testified that the victim would be functioning at the sixth grade skill level, at best, and probably at the third to fifth grade level. She also testified that, in the area of social interactions, she would perform like a ten to twelve-year-old.

We have already noted the legal principles relating to expert testimony. Applying our rule of evidence 702, there seems to be no question about the potential of psychological evidence in the present case to assist the trier of fact. The victim's lack of mental capacity is a key element in the crime charged. *See* Iowa Code § 709.4(2).

Chancy does not complain that the witness Oleson lacks training, education or experience in these matters. He complains that, in this case, the tests given to the victim were too remote in time. While this fact would necessarily affect the weight of the evidence, we do not believe it would impair its admissibility. Oleson testified on voir dire by defense counsel that, even though the evaluations were over two years old, they would nevertheless be of some assistance in determining the present mental condition of the victim. We conclude the court did not abuse its discretion in admitting this testimony.

In passing, we note that these questions surrounding the admissibility of expert testimony are not controlled by our recent case *State v. Myers*, 382 N.W.2d 91 (Iowa 1986). In *Myers*, we held it was reversible error for the court to allow testimony by an "expert" to the effect that minor children of sex abuse crimes rarely lie in regard to the event. That case involved a direct comment by an expert on the credibility of a witness, a matter generally reserved for the trier of fact. *Id.* at 97. We do not have that situation here. We also noted in *Myers* that the testimony in question was not directed at "a fact in issue," *id.* at 97. In contrast to *Myers*, the mental condition of the victim in this case is an element of the crime charged.

## II. *Sufficiency of the Evidence.*

The defendant claims the evidence of the victim's mental condition was insufficient to sustain the verdict. The question of what is required to establish a "mental defect or incapacity" under section 709.4(2) was addressed by us in *State v. Sullivan*, 298 N.W.2d 267 (Iowa 1980) (In *Sullivan*, the portion of section 709.4(2) which provided for a conviction upon a showing that the victim "lacked the mental capacity to know the right and wrong of conduct in sexual matters" was held to be unconstitutionally vague. The balance of section 709.4(2), the portion of the statute involved here, was held to be valid.). In *Sullivan*, we considered the extent of incompetency required, citing the case of *State v. Haner*, 186 Iowa 1259, 173 N.W. 225 (1919):

Properly construed in light of the overall thrust of section 709.4, the obvious legislative intent, and our decision in *Haner*, we hold the remaining portion of subsection 709.4(2) protects not only completely incompetent persons but those who 'while having some degree of intellectual power and some capacity for instruction and improvement, are still so far below the normal in mental strength that they can offer no effectual resistance to the approach of those who will take advantage of their weakness.' *Haner*, 186 Iowa at 1262, 173 N.W. at 226.

*In short, subsection 709.4(2) protects those who are so mentally incompetent or incapacitated as to be unable to un-*

*derstand the nature and consequences of the sex act. Such persons cannot give the meaningful "consent" required by the enactment.*

Sullivan, 298 N.W.2d at 272 (emphasis added).

█ It is apparent from *Sullivan* and *Haner* that a showing of inability to consent, for purposes of section 709.4(2), need not rise to the level of showing complete incompetency or lack of "capacity for instruction and improvement." The key issue is whether the mental strength of the victim is so far below the normal that it precludes effective resistance. *Sullivan,* 298 N.W.2d at 272; *Haner,* 186 Iowa at 1262, 173 N.W. at 226. Persons who are so mentally incompetent or incapacitated as to be unable to understand the nature and consequences of the sex act are incapable of giving consent. *Sullivan,* 298 N.W.2d at 272.

█ In addition to the testimony of Schultz and Oleson, there was additional evidence from which a jury could find that the victim lacked the requisite understanding of the sex acts involved. First, the victim testified at trial, and the jury was furnished some insight into her understanding of the consequences of those acts. In fact, even on a cold record, her naivete in sexual matters is apparent.

In addition, the victim's parents testified, corroborating the testimony of Schultz and Oleson that the victim performed at the sixth to seventh grade level, that she was enrolled in special education classes and that she was mentally retarded. The victim's classroom teacher concurred.

The court in the present case, in its instructions, incorporated the rationale of the *Sullivan* case. It instructed that:

The alternative element relating to [the victim's] suffering from a mental defect or incapacity which precluded consent requires the State to prove beyond a reasonable doubt that [she] was, at the time of the sex act, mentally incompetent to the extent that she could not understand the nature and consequences of the sex

act, rendering her unable to offer effectual resistance to the approach of persons who might take advantage of the weakness.

We believe there was substantial evidence from which a jury could make such a finding in this case.

We find no basis for reversal.

AFFIRMED.