# IN THE COURT OF APPEALS OF IOWA

No. 14-0424
Filed July 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LUIS RODRIGUEZ,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.


        Luis Rodriguez challenges his conviction of third-degree sexual assault.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Linda Fangman, Assistant

County Attorney, for appellee.


        Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Luis Rodriguez challenges his conviction of third-degree sexual assault, contending his trial counsel was ineffective in failing to assert the statutory definition of "mentally incapacitated" is unconstitutionally vague and in failing to object to the jury instruction definition. He also asserts there is insufficient evidence to sustain his conviction. Trial counsel had no duty to raise a meritless constitutional claim, and Rodriguez does not establish a failure to object to the instruction prejudiced him. Substantial evidence supports the conviction and we therefore affirm.

**I. Background Facts and Proceedings.**

On the evening of June 21, 2012, Luis Rodriguez attended a going away party for a friend. Rodriguez, along with his friends Logan Lumley, Justin Scheffler, and Dillon Sorenson, then spent the evening at a bar in Cedar Falls.

The same evening, A.R.[1] met a group of friends to celebrate a birthday. After dinner, the group of girls also visited the bars in Cedar Falls. While at the bar (Joker's), A.R. drank heavily. At one point during the evening, A.R.'s friend, Gabby Sabic, discovered A.R. in the bathroom, where she was vomiting from drinking too much. Around this point, A.R.'s memory of the evening began to get "gray." After leaving Joker's, A.R. and Sabic went to an after-party at a house. A.R. did not know where the party was or who was throwing the party. Due to intoxication, A.R. continued to have difficulties remembering details of leaving the

---

[1] We choose to protect the identity of the complaining witness in this written opinion. *See State v. Cromer*, 765 N.W.2d 1, 3 n.1 (Iowa 2009); *State v. Knox*, 536 N.W.2d 735, 736 (Iowa 1995) (identifying complaining witness in sex-abuse case only as "complainant"); *State v. Plaster*, 424 N.W.2d 226, 227 (Iowa 1988) (identifying complaining witness in sex-abuse case by first name only).

bar and arriving at the party. Once A.R. arrived at the party, she, Sabic, Rodriguez, Sorenson (who lived at the house), Schreffler, and Lumley went to the garage. A.R. remembers sitting in a chair in the garage. A.R. was "passing out, in and out." Eventually, Sorensen carried A.R. to a basement couch. A.R. did not wake up during the transfer and had no memory of being moved to the basement. Rodriguez followed A.R. to the basement; the rest of those present slept upstairs. A.R. next remembers waking up with an unknown man on top of her, and the man's penis was in her vagina. A.R. told him to stop. He did not respond at first, but after A.R. pushed him he stopped. A.R. gathered up her clothes and left the house.

A friend picked A.R. up and took her home. A.R. called a rape hotline, which in turn contacted Seeds of Hope, a victim's advocate center, and arranged to have A.R. picked up and someone accompany her to the hospital. From swabs taken during A.R.'s sexual assault examination, the crime lab identified Rodriguez's sperm in A.R.'s vagina and anus.

A.R. later identified Rodriguez in a photographic line up. When Rodriguez was questioned by Officer Mark Abernathy on July 31, 2012, Rodriguez was aware of A.R.'s allegations but he denied any assault or sexual activity occurred with A.R. Rodriguez stated that both he and A.R. were "sloppy drunk" and "making out." Rodriguez told Officer Abernathy that he was not able to get an erection due to his intoxication. Rodriguez again denied sexual contact when Abernathy questioned him in December 11, 2012. Rodriguez did acknowledge A.R. was "extremely intoxicated." When confronted with the DNA results of

A.R.'s sexual assault examination, Rodriguez did not say they had consensual sex. He could not explain the presence of his DNA.

At trial, A.R. identified Rodriguez as the man who had sex with her. She testified she did not have consensual sex with him. She stated she remembered nothing between the time she was in the garage and awaking in the morning with Rodriguez on top of her.

Lumley testified A.R. was passing out due to alcohol when in the garage. Sorenson testified, "It was very clear that all of us were, some more than others, and [A.R.] being the one most intoxicated that night." Sorenson testified that after he carried A.R. to the basement and placed her on the loveseat, he returned to the basement after Sabic expressed concern that A.R. and Rodriguez were on the floor having sex. Sorenson went to the basement and saw the two on the floor; he yelled at Rodriguez to "knock it off." Sorenson testified he went downstairs because he had a concern "Luis was taking advantage of the female, [A.R.], downstairs." The prosecutor asked Sorenson, "Did you think she could consent at that point?" Sorenson stated, "No."

Defense counsel moved for judgment of acquittal, contending the State had failed to establish "the accuser in this case was mentally incapacitated or physically incapacitated or physically helpless when the alleged sex act occurred." The court overruled the motion stating, "There is ample evidence of incapacitation and corroborated evidence of incapacitation of the alleged victim in this case." Rodriguez did not testify or present any other witness. The defense did not object to the proposed jury instructions. The jury returned a general verdict finding Rodriguez guilty of third-degree sexual abuse and he now

appeals, contending his trial counsel was ineffective and there is not sufficient evidence to sustain the conviction.

**II. Scope and Standard of Review.**

The right to the effective assistance of counsel is grounded in the Sixth Amendment to the United States Constitution, and therefore, we review a claim of ineffective assistance de novo. *State v. Ambrose*, 861 N.W.2d 550, 555, 556 (Iowa 2015).

We review challenges to the sufficiency of evidence for correction of errors at law. *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011).

> In doing so, we examine whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record. We find evidence substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. We draw all fair and reasonable inferences that may be deduced from the evidence in the record. In assessing the sufficiency of the evidence, we find circumstantial evidence equally as probative as direct.

*Id.* (citations omitted).

**III. Discussion.**

*A. Ineffectiveness—failure to raise constitutional challenge.* Rodriguez claims the definition of "mentally incapacitated" found in Iowa Code section 709.1A(1) (2011) is unconstitutionally vague as applied and on its face. He asserts a competent trial counsel would have recognized the statute's unconstitutionality and raised the issue before trial. We disagree.

"To establish an ineffective-assistance-of-counsel claim, an applicant must show that '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa

2015) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). The claimant must prove both elements by a preponderance of the evidence. *Ambrose*, 861 N.W.2d at 556. We can resolve an ineffective-assistance claim under either prong of the analysis. *Id.*; *see also State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Trial counsel has no duty to raise meritless claims. *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). And it is not enough to simply claim that counsel should have done a better job. *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (citing *State v. White*, 337 N.W.2d 517, 519 (Iowa 1983)). A defendant must state how counsel's performance was inadequate and how competent representation probably would have changed the outcome. *Rivers v. State*, 615 N.W.2d 688, 690 (Iowa 2000); *Dunbar*, 515 N.W.2d at 15.

"The Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, section 9 of the Iowa Constitution prohibit enforcement of statutes that are so vague that they do not provide citizens with fair warning of what conduct is prohibited and encourage discriminatory law enforcement."[2] *State v. Feregrino*, 756 N.W.2d 700, 703 (Iowa 2008). We presume the statute is constitutional. *State v. Robinson*, 618 N.W.2d 306, 314 (Iowa 2000). Consequently, in order to prove counsel failed to perform an essential duty in not challenging the statue, Rodriguez must demonstrate the

---

[2] Rodriguez does not offer argument or authority for the proposition that the Iowa Constitution should be construed differently than the United States Constitution. *See State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005) ("In the absence of an argument that our analysis under each should differ, we construe them similarly in this case as well.").

"unconstitutional vagueness of [the] criminal statute" beyond a reasonable doubt. *See id.*

Rodriguez was charged with sexual abuse in the third degree under Iowa Code section 709.4(4). The statute prohibits a sex act "performed while the other person is mentally incapacitated, physically incapacitated, or physically helpless." Iowa Code § 709.4(4). "'Mentally incapacitated' means that a person is temporarily incapable of apprising or controlling the person's own conduct due to the influence of a narcotic, anesthetic, or intoxicating substance." *Id.* § 709.1A(1). It is this definition of mental incapacitation which Rodriguez claims is unconstitutional. However, the jury was not instructed on the elements of 709.4(4), nor on the full definition of "mentally incapacitated" in 709.1A(1). Rather, the jury was instructed that the State had to prove:

> 1. On or about the 22nd day of June, 2012, the defendant performed a sex act with [A.R.].
> 2. The defendant performed the sex act while [A.R.] was mentally incapacitated or physically helpless and the defendant knew or reasonably should have known that [A.R.] was mentally incapacitated or physically helpless.[3]

The definition instruction no. 21 informed the jury: "Mentally incapacitated means that a person is temporarily incapable of controlling the person's own conduct due to the influence of a[n] intoxicating substance."[4]

---

[3] "Knew or reasonably should have known" is not an element of the offense under Iowa Code section 709.4(4). *Compare* Iowa Code § 709.4(3)(b) *with id.* § 709.4(4); *see also State v. Tague*, 310 N.W.2d 209, 211 (Iowa 1981) ("Statutes regarding sex offenses are common examples of employment of strict liability intended to protect the public welfare."). However, because no party objected to this instruction, no. 20, it is the law of the case. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

[4] No objection was lodged to this instruction either, and thus it is the law of Rodriguez's case. *Canal*, 773 N.W.2d at 530.

*1. Facial Challenge.* Rodriguez claims the statutory definition of mentally incapacitated in 709.1A(1) is unconstitutional on its face. While a defendant who has been charged with the violation of a statute always has standing to claim the statute is unconstitutionally vague as applied to himself, he does not necessarily have standing to claim that it is unconstitutional as applied to others or on its face. *State v. Hunter*, 550 N.W.2d 460, 463 n.1 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306 (Iowa 2000). "If a statute is constitutional as applied to a defendant, the defendant cannot make a facial challenge unless a recognized exception to the standing requirement applies." *State v. Robinson*, 618 N.W.2d 306, 311 n.1 (Iowa 2000); *see also Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). "One such exception is a situation in which the vagueness of the statute chills the exercise of First Amendment rights." *State v. Musser*, 721 N.W.2d 734, 746 n.7 (Iowa 2006) (citing *Hunter*, 550 N.W. 2d at 463). We do not find this case appropriate to address a facial vagueness challenge. Consequently, Rodriguez has not proved he was prejudiced by his counsel's failure to raise the issue that the statute was unconstitutionally vague on its face.

*2. As applied.* The State charged Rodriguez with third-degree sexual abuse for performing a sex act "while the other person is mentally incapacitated, physically incapacitated, or physically helpless." Iowa Code § 709.4(4) (2011).

Rodriguez asserts the definition of "mentally incapacitated" was unconstitutionally vague as applied to him.

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits vague statutes.
>> A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.
>
> [*Musser*, 721 N.W.2d at 745] (citations and internal quotation marks omitted). We have also said that a "similar prohibition has been recognized under the Iowa due process clause found in article I, section 9 of the Iowa Constitution." *Formaro v. Polk Cnty.*, 773 N.W.2d 834, 840 (Iowa 2009).

*State v. Showens*, 845 N.W.2d 436, 441-42 (Iowa 2014).

Rodriguez contends the definition of "mentally incapacitated" fails on the first enunciated reason—that it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. He argues: "Having sexual contact with an intoxicated person is not prohibited. It is unreasonable for Rodriguez to be required to consider whether the other person's judgment is impaired by alcohol and whether she would otherwise not agree to participation in a sex act."

Our supreme court has rejected a similar argument. In *State v. Sullivan*, 298 N.W.2d 267 (Iowa 1980), our supreme court rejected a challenge to a predecessor statute, which prohibited a sex act where "[t]he other participant is suffering from a mental defect or incapacity which precludes giving consent." *Sullivan*, 298 N.W.2d at 269 n.1, 272. There, the court stated the applicable principles:

> The person mounting the constitutional challenge on a legislative enactment carries the heavy burden to rebut a strong presumption of constitutionality. If a statute can be made constitutionally definite by a reasonable construction, this court is under a duty to give the statute that construction.

The specificity due process requires of a penal statute . . . need not be apparent from the face of the statute but may be ascertained by reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage. Judicial decisions from other jurisdictions may be helpful.

In ascribing meaning to a criminal statute, "courts may properly consider the evil sought to be remedied and the objects or purposes the legislative enactment seeks to obtain."

*Id.* at 270-71 (citations omitted). The *Sullivan* court concluded,

We are unimpressed by the defendant's arguments that the statute is rendered vague by its requirement that the alleged violator determine another's mental capacity . . . .

. . . .

The fact an erroneous judgment by an offender may still subject him or her to criminal sanction if the partner in fact does not possess the requisite mental capacity does not make the statute unconstitutional. This crime does not require knowledge or intent. As in the case of sexual abuse due to age statutes, the policies in support of protecting those who suffer mental incapacities outweigh the danger of mistake.

*Id.* at 272-73.

In *Meyers*, 799 N.W.2d at 143, addressing the "against the will" language of section 709.4(1) our supreme court made clear

[A] psychological inability to consent broadly protects individuals from nonconsensual sex when particular circumstances have rendered that person incapable of consenting to the sexual advances of a particular person. Importantly, the statute as a whole expresses no limit on the conduct or circumstance that can be used to establish nonconsent under section 709.4(1). *See* [Iowa Code] § 4.2 (directing courts to liberally construe the provisions of the Code "with a view to promote its objects and assist the parties in obtaining justice").

[N]onconsent includes both consent that is nonexistent and consent that is ineffectual, and these circumstances have been largely assimilated into the statute to account for its present expanded categories of rape. Nevertheless, "the unifying principle among this diversity of conduct is the idea of meaningful consent." Consent precludes rape, which conversely means the law of rape focuses on "imposition by the actor under circumstances where there is an actual failure of consent or where the law is prepared to

characterize an actual consent as incompetent." Model Penal Code § 213.1 cmt. 4, at 301.

(Some internal citations omitted.) It is the mental state of the victim that "is a proper circumstance to consider in determining if a sex act is nonconsensual." *Meyers*, at 799. "[M]eaningful consent is the important inquiry, and this inquiry normally takes into account circumstances indicating any overreaching by the accused, together with circumstances indicating any lack of consent by the other person." *Id.* at 146. Rodriguez argues that *Sullivan*'s focus on a mentally-disabled victim as opposed to a temporarily-incapacitated victim makes the *Sullivan* analysis irrelevant here. We disagree.

Here, the State was required to prove A.R. was mentally incapacitated or physically helpless. As already noted, "mentally incapacitated" was defined by the jury instructions to mean: "[T]hat a person is temporarily incapable of controlling the person's own conduct due to the influence of an intoxicating substance."[5] We have no difficulty determining ordinary people are capable of understanding this definition. "It is well settled in this State that a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person." *State v. Murphy*, 451 N.W.2d 154, 155 (Iowa 1990). It has also "long been held that a witness, either lay or expert, may testify to an 'ultimate fact which the jury must determine.'" *Id.* at 156. The concepts of intoxication and controlling one's own

---

[5] We note this jury instruction contains a more limited definition of "mentally incapacitated" than does Iowa Code section 709.1A(1), which allows the State to prove mental incapacity by either a victim's inability to (1) control her own conduct *or* (2) apprise her own conduct. However, the State did not pursue the "apprise" alternative and we therefore do not address Rodriguez's arguments about the definition of "apprise."

behavior are commonly understood. It is not unreasonable to expect a person to refrain from having sexual contact with another who is incapable of controlling their own conduct due to the influence of an intoxicating substance.[6]

The State also points out that in this case, due to jury instruction 20, the State was also required to prove Rodriguez knew or reasonably should have known of A.R.'s mental incapacity or physical helplessness. By its guilty verdict, the jury found this additional element to be true beyond a reasonable doubt.

The evidence submitted at trial allowed the jury to find A.R. was intoxicated to the point of not being able to control her own conduct. At the after-party, A.R. repeatedly "passed out" in the chair where she was sitting, and did not stir when Sorenson carried her downstairs. Sorenson testified he went to the basement because he was concerned Rodriguez was sexually taking advantage of A.R. When the prosecutor asked Sorenson, "Did you think she could consent at that point?" Sorenson stated, "No." Rodriguez himself admitted A.R. was "too wasted" and that she was "real sloppy." He told Officer Abernathy they were

---

[6] In an unpublished opinion, *State v. Cromer*, No. 04-0814, 2005 WL 724211, at *4 (Iowa Ct. App. Mar. 31, 2005), this court reversed a trial court's conclusion that the application of the sexual abuse statutes through the jury instructions violated the defendant's right to due process "because there's nothing in there that says the defendant had to have any knowledge that she was mentally incapacitated." We stated:

> The standard imposed by Iowa Code section 709.4(4) is clear: to avoid the proscribed conduct Cromer should have refrained from performing a sex act with a person who is mentally incapacitated as that term is defined in Iowa Code section 709.1A(1). If he did engage in such conduct, his lack of knowledge of [the victim's] mental incapacitation caused by his intoxication is no defense. *See State v. Tague*, 310 N.W.2d 209, 211 (Iowa 1981) (indicating that "statutes regarding sex offenses are common examples of employment of strict liability intended to protect the public welfare"). Moreover, even if [the defendant's] subjective knowledge of [the victim's] mental incapacity was required by due process, the weight of the evidence supports a jury conclusion that [the defendant] knew of [the victim's] . . . ."

both "highly intoxicated" and they were "too drunk." Even focusing (as Rodriguez does in his brief) on the sex act Rodriguez was committing when A.R. woke up or became conscious with Rodriguez's penis in her vagina, the evidence supports the jury's finding that A.R. was mentally incapacitated or physically helpless. A.R. was asleep, passed out, or completely unaware of her surroundings during this time, and in either circumstance, Iowa Code section 709.1A(1) gave Rodriguez fair notice that sexual contact was prohibited. The fact that Rodriguez may have somehow incorrectly assessed A.R.'s mental capacity does not render the statute unconstitutional. Because the statute is not unconstitutionally vague as applied to Rodriguez, his trial counsel breached no duty in failing to raise the constitutional challenge.

*B. Ineffectiveness—failure to object to jury instruction definition of "mentally incapacitated."* Rodriguez also asserts trial counsel was ineffective in failing to object to the jury instruction that set out the definition of "mentally incapacitated" but did not include "apprising" where the statutory definition is: "[A] person is temporarily incapable of *apprising* or controlling the person's own conduct due to the influence of a narcotic, anesthetic, or intoxicating substance." Iowa Code § 709.1A(1) (emphasis added). The instruction given to the jury here provided: "[T]hat a person is temporarily incapable of controlling the person's own conduct due to the influence of an intoxicating substance."

Rodriguez cannot establish he was prejudiced by counsel's failure to object. The instruction given was more narrow than required. In addition to requiring the State to prove A.R. was incapable of controlling her own conduct due to an intoxicating substance, the jury was instructed it must also find

Rodriguez knew or had reason to know she was mentally incapacitated. By returning a guilty verdict, the jurors found A.R. was unable to control her conduct due to the influence of an intoxicating substance or she was physically helpless. Under these circumstances, Rodriguez is hard-pressed to establish the omission of another alternative of mental incapacitation would have changed the outcome of the trial.

*C. Sufficiency of the evidence.* Finally, Rodriguez asserts there is insufficient evidence that A.R. was "temporarily incapable of controlling her own conduct due to the influence of an intoxicating substance" though he does not dispute that she was intoxicated.

As already noted, the State here had to prove:

> 1. On or about the 22nd day of June, 2012, the defendant performed a sex act with [A.R.]
> 2. The defendant performed the sex act while [A.R.] was mentally incapacitated *or* physically helpless and the defendant knew or reasonably should have known that [A.R.] was mentally incapacitated or physically helpless.

(Emphasis added.)

In reviewing the evidence, we view the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *State v. Stanford*, 814 N.W.2d 611 615 (Iowa 2012). "We will uphold a verdict if substantial evidence supports it." *Id.* (citation, alteration, and internal quotation marks omitted). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* "If substantial evidence is presented to support each alternative method of

committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981) (citation, alterations, and internal quotation marks omitted).

With these principles in mind, we summarize the evidence: A.R. was extremely intoxicated on the night in question. Rodriguez himself admitted she was "sloppy drunk." She vomited while still at the bar. She slurred her words and stumbled when she walked. A.R. passed out in the garage and did not stir or react when she was carried downstairs and placed on a couch at about 3 a.m. A.R. testified she woke up about 5 or 6 a.m. and an unknown male was on top of her with his penis in her vagina. A.R. immediately told him to stop, and he did not. The unknown male, Rodriguez, did not stop until A.R. physically pushed him away from her. The jury could reasonably find A.R. was asleep or not conscious when Rodriguez initiated the sex act. *See State v. Tapia*, 751 N.W.2d 405, 407 (Iowa Ct. App. 2008) ("In Iowa 'a crime commences with the first act directed toward the commission of the crime.'"). Thus, there is substantial evidence that A.R. was physically helpless or mentally incapacitated to support the conviction. *See id.* ("When viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found the victim incapable of consent due to being asleep and physically helpless.").

**AFFIRMED.**